[Civ. No. 40930. Second Dist., Div. Three. Feb. 27, 1974.]

C. R. FEDRICK, INC., Plaintiff and Respondent, v.
STATE BOARD OF EQUALIZATION, Defendant and Appellant.

**COUNSEL**

Evelle J. Younger, Attorney General, and Philip C. Griffin, Deputy Attorney General, for Defendant and Appellant.

Clyde R. Maxwell, Karl F. Geiser, Kopald & Mark, Richard M. Mark and Lawrence W. Hait for Plaintiff and Respondent.

## OPINION

LORING, J.\*—C. R. Fedrick, Inc., a California corporation (hereafter Fedrick) filed a complaint against the State Board of Equalization of the State of California as an agency of the State of California (hereafter Board) under Revenue and Taxation Code section 6933[1] on a claim for refund of sales and use taxes seeking repayment of the sum of $13,129.48. In its complaint, Fedrick alleged that Board conducted an audit of plaintiff's business; it concluded that there was a deficiency in sales and use taxes and interest in the sum of $13,073.97 for the period July 1, 1962, to September 30, 1965; that the determination was erroneous because it was based on "grossly incorrect and arbitrary assumptions without foundation in fact . . . included items not taxable" or which were "not the obligation of the plaintiff"; "erroneously included machinery and equipment furnished and sold to the United States Government or sold for resale to other contractors for sales to the United States Government or its agencies which were not properly taxable to the plaintiff"; "erroneously included as taxable sales or uses items which had either been taxed at the source . . . [or] which were not taxable at all to the plaintiff"; "erroneously included items of labor and transportation expense"; included items "upon which plaintiff has reported and paid Sales Tax"; included items of machinery which "has not been sold or used and which is still in inventory." Other items of overpayment were alleged for the same period, making a total alleged overpayment of $13,129.48; that a claim for refund was filed July 6, 1967, and denied by Board on August 8, 1967, and notice of denial was given by mail on August 14, 1967.

After Board filed an amended answer and counterclaim, the parties entered into a stipulation of facts, which allowed for the introduction of additional evidence. The case proceeded to nonjury trial on April 29, 1971, which resulted in a judgment for Fedrick in the sum of $7,931.76 in refund of tax, $1,513.35 interest, and in favor of Board on the balance of Fedrick's claim of $3,023.08 tax and $434.03 interest. The judgment was also in favor of Fedrick on the counterclaim. Fedrick was awarded costs.

Board appeals from those portions of the judgment in favor of Fedrick. Fedrick does not appeal from those portions of the judgment in favor of Board.

---

\*Assigned by the Chairman of the Judicial Council.

[1]Hereafter all code sections refer to Revenue and Taxation Code unless otherwise noted.

## Contentions

1. Board contends that the use by Fedrick of various items of tangible personal property in the performance of the contract with the United States government for the construction of improvements to California real property was a taxable use under section 6384,[2] 6094,[3] and 6202.[4]

2. The sale of capital equipment to Action Equipment Company was a sale subject to sales and use tax laws.

3. Fedrick cannot raise any legal issue in the action for refund not stated in the claim for refund.

4. The Board is entitled to judgment on its counterclaim.

## Facts

Fedrick was a subcontractor to the prime contractor, United States Corps of Engineers, under contract to furnish and install certain alterations and

[2]Section 6384 reads as follows: "Notwithstanding any other provision of law the tax imposed under this part shall apply to the gross receipts from the sale of any tangible personal property to contractors purchasing such property either as the agents of the United States or for their own account and subsequent resale to the United States for use in the performance of contracts with the United States for the construction of improvements on or to real property in this State."

[3]Section 6094 reads as follows: "(a) If a purchaser who gives a resale certificate makes any use of the property other than retention, demonstration, or display while holding it for sale in the regular course of business, the use shall be taxable to the purchaser under Chapter 3 (commencing with Section 6201) of this part as of the time the property is first used by him, and, except as provided in subdivisions (b) and (c) of this section, the sales price of the property to him shall be the measure of the tax.

"(b) If such use is limited to the loan of the property to customers as an accommodation while awaiting delivery of property purchased or leased from the lender or while property is being repaired for customers by the lender, the measure of the tax is the fair rental value of the property for the duration of each loan so made.

"(c) If the property is used frequently for purposes of demonstration or display while holding it for sale in the regular course of business and is used partly for other purposes, the measure of the tax is the fair rental value of the property for the period of such other use or uses."

[4]Section 6202 reads as follows: "Every person storing, using, or otherwise consuming in this State tangible personal property purchased from a retailer is liable for the tax. His liability is not extinguished until the tax has been paid to this State except that a receipt from a retailer engaged in business in this State or from a retailer who is authorized by the board, under such rules and regulations as it may prescribe, to collect the tax and who is, for the purposes of this part relating to the use tax, regarded as a retailer engaged in business in this State, given to the purchaser pursuant to Section 6203, is sufficient to relieve the purchaser from further liability for the tax to which the receipt refers."

improvements of the airfields and air navigation equipment at March Air Force Base near Riverside, California,[5] the Siskiyou County Airport, Siskiyou County, California,[6] and certain similar improvements at other military airfields and installations.[7]

In addition, Fedrick's claims for refund and complaint for refund included a claim for refund of sales and use taxes on the installation of vari-

[5] In their stipulation the parties agreed that at March Air Force Base Fedrick was to furnish and install the following items: "A. Certain electrical systems required for the operation of the instrument landing system including equipment, controls, connections, transformers, 5,000-volt cable and wires, switches, circuit breakers, primary fuse cutouts, oil fuse cutouts, remote control oil switches and sectionalizing boxes.

"B. A complete electrical duct system underground to be used as a communications and electrical distribution network; said system comprised of a concrete encased duct system, manholes, handholes, primary cable system, series lighting cable system, cable marker tags and accessories all as required by the United States Corps of Engineers' specifications.

"C. Cabling systems for the runway approach distance marker and taxiway lighting including runway, threshhold and taxiway lights, bases and foundations for lighting units, revisions to the existing cable system, the cabling system, the distance marker lights, the distance markers, the rehabilitation of existing approach lights, the addition of a condensor-discharge sequence flashing light system, its connection of the same through an existing vault or building containing the necessary control equipment, and work necessary to connect the same with the control consoles in the control tower. The runway lighting system consisted of high-intensity runway circuits, the 5,000-volt leads; the entire system was to be connected to the regulators that would permit the controllers to regulate the intensity of the lighting as required by the visual approach conditions at the facility. There is a visual glide-slope indicating system consisting of transverse light bars, spaced and installed according to the specfications.

"D. A diesel electric generator furnished and installed complete with piping, fuel system and various electrical connections required for same as required by its function as an alternate power source for the instrument landing system and other electrical systems at March Air Force Base, including the radar control consoles and equipment. The generator was connected to the lines for the operation of the electronic and visual aid facilities for the regulation of aircraft. The generator was to have sufficient capacity to maintain operational facilities at the March Field Facility in case of a failure or reduction of commercial power at March Air Force Base."

[6] In their stipulation the parties agreed that at Siskiyou Fedrick was to furnish and install the following items: "(a) Runway overruns; (b) Operational apron of Portland Cement for buildings and aircraft; (c) Approach lighting system; (d) Runway lighting system; (e) Aircraft shelter; (f) Maintenance dock; (g) Shop maintenance building; (h) Ammunition storage; (i) An overhead outside distribution system; (j) Sewer service; (k) Domestic water; (l) Roads, and (m) Fuel distribution and storage for heating."

[7] In their stipulation the parties agreed that Fedrick was to do work at other military air bases and installations such as Alameda Naval Air Station, Hamilton Air Force Base, George Air Force Base, the naval facility at Point Arguello, Lawrence Radiation Laboratory and Senator Wash Dam, similar to that which was done at March Air Force Base and Siskiyou, and in addition the following: "(a) Furnish and install a power check facility and turntable at Alameda Naval Air Station; (b) Furnish and install a natural gas main at Lawrence Radiation Laboratory; and (c) Furnish and install a pumping-generating plant at Senator Wash Dam."

ous items of personal property in connection with a "linear acceleration installation," located on real propery owned by Stanford University, and leased by it to the United States government. The trial court decided that Fedrick was taxable on such items and, as noted, Fedrick does not appeal from that judgment.

## Discussion

The Board claims that taxes are due from Fedrick under sections 6384, 6094 and 6202. Prior to 1941 there would have been, in our opinion, a serious question regarding the constitutionality of section 6384 under authority of *Standard Oil Co.* v. *California,* 291 U.S. 242 [78 L.Ed. 775, 54 S.Ct. 381]. (See also *Standard Oil Co.* v. *Johnson,* 10 Cal.2d 758 [76 P.2d 1184].) However, in *Alabama* v. *King & Boozer,* 314 U.S. 1 [86 L.Ed. 3, 62 S.Ct. 43, 140 A.L.R. 615] the United States Supreme Court upheld the constitutionality of a state sales tax levied on and collected from a contractor which the contractor in turn collected from its customer, even though the customer was the United States of America and the contract was a cost-plus contract. Thereafter, in 1947, Congress passed Public Law 819 (Buck Act, 4 U.S.C. § 105) which ceded to the states power to levy and collect sales and use taxes "in any Federal area within such State to the same extent and with the same effect as though such area was not a Federal area."[8] The validity of such congressional act has been upheld by the United States Supreme Court. In *Polar Co.* v. *Andrews* (1964) 375 U.S. 361 [11 L.Ed.2d 389, 84 S.Ct. 378] the Supreme Court said (at p. 383 [11 L.Ed.2d at p. 403]): "Besides, 4 U.S.C. § 105, enacted subsequent to *James* and *Standard Oil, supra* [*James* v. *Dravo Contracting Co.,* 302 U.S. 134 (82 L.Ed. 155, 58 S.Ct. 208, 114 A.L.R. 318); *Standard Oil Co.* v. *California, supra,* 291 U.S. 242], confers upon the States jurisdiction to levy and collect a sales or use tax 'in any Federal area,' and a sales or use tax is defined as 'any tax levied on, with respect to, or measured by, sales . . . of tangible personal property . . . .' 4 U.S.C. § 110. We think this provision provides ample basis for Florida to levy a tax measured by the

---

[8]The entire section reads: "§ 105. State, and so forth, taxation affecting federal areas; sales or use tax

"(a) No person shall be relieved from liability for payment of, collection of, or accounting for any sales or use tax levied by any State, or by any duly constituted taxing authority therein, having jurisdiction to levy such a tax, on the ground that the sale or use, with respect to which such tax is levied, occurred in whole or in part within a Federal area; and such State or taxing authority shall have full jurisdiction and power to levy and collect any such tax in any Federal area within such State to the same extent and with the same effect as though such area was not a Federal area.

"(b) The provisions of subsection (a) shall be applicable only with respect to sales or purchases made, receipts from sales received, or storage or use occurring, after December 31, 1940. July 30, 1947, c. 389, § 1, 61 Stat. 641."

amount of milk Polar distributes monthly, including milk sold to the United States for use on federal enclaves in Florida."

In *United States* v. *Mississippi Tax Comm'n,* 412 U.S. 363 [37 L.Ed.2d 1, 93 S.Ct. 2183] (decided June 4, 1973), the Supreme Court was asked to consider the validity of a Mississippi state law imposing what appeared to be a tax on wholesale distributors of alcoholic beverages transported through Mississippi for sale at post exchanges on federal enclaves in Mississippi.

One of the arguments of the Mississippi State Tax Commission was that the tax should be considered as a sales tax which would therefore be valid under the Buck Act. A majority of the court concluded that the type of tax should be determined, at least initially, by the trial court and remanded the case, inter alia, for that purpose. In our view, the majority thereby tacitly held that if the tax were a sales tax it would be valid under the Buck Act. Justice Douglas, with Justice Rehnquist concurring, argued that the Supreme Court itself could determine that the tax was a sales tax, valid under the Buck Act, and no remand was necessary. The difference between the majority and minority opinions therefore was not over whether or not the Buck Act was constitutional, but over which court, the trial court or the Supreme Court, should initially determine whether or not the tax was a sales tax. Thus, in our view, all nine justices agreed that if the tax was a sales tax, it would be valid under the Buck Act. However, for our purposes, the importance of the decision is the summary of the historical background of the Buck Act set forth in the opinion of Justice Douglas when he said (412 U.S. at pp. 386-388 [37 L.E.2d at pp. 18-19]): "At least since *Alabama* v. *King & Boozer,* 314 U.S. 1, state taxes have been upheld on those doing business with the Federal Government even as respects cost-plus contracts where the terms of the contract forced their payment out of the federal treasury. The principle of *King & Boozer* permits no exception for distillers who make wholesale transactions with post exchanges, as the legal incidence of the tax is on the distillers, not on the post exchanges. Moreover, the Buck Act, 54 Stat. 1059, now 4 U.S.C. § 105 *et seq.,* authorizes the application of state sales and use taxes to all post exchange purchases where 'the sale or use, with respect to which such tax is levied, occurred in whole or in part within a Federal area.' The Buck Act exempts from such taxes, sales, purchases, storage or use of personal property sold by the United States or any instrumentality thereof to 'any authorized purchaser' (§ 107), who is defined as one permitted to purchase at commissaries, ship's stores, post exchanges and the like, by regulations of the departmental Secretary.

"It also does not authorize 'the levy or collection of any tax on or from the United States or any instrumentality thereof.' 4 U.S.C. § 107(a).

"The markup which the State requires wholesalers of liquor to make is in its worst light a sales tax. There is no 'levy or collection' by the State from a post exchange in any technical, legal sense. As noted, the economic but not the legal incidence of the tax is in the post exchanges. The post exchange is merely paying indirectly the cost of doing business in the manner in which *King & Boozer* held that there was no constitutional immunity from state taxation." (Fn. omitted.)

Justice Douglas further stated (at pp. 389-390 [37 L.Ed.2d at pp. 20-21]): "While the Buck Act by § 107(a) bars a state tax on federal instrumentalities—which as *Paul* holds includes post exchanges—*King & Boozer* allows a state tax on those who, like the wholesalers in this case, do business with the United States. *King & Boozer,* decided in 1941, after the Buck Act, stated the modern version of the scope of intergovernmental immunity. The present case is therefore on all fours with the excise tax imposed by Florida on milk distributors who in turn sold to federal enclaves. In referring to the Buck Act we said: 'We think this provision provides ample basis for Florida to levy a tax measured by the amount of milk Polar distributes monthly, including milk sold to the United States for use on federal enclaves in Florida.' *Polar Ice Cream & Creamery Co.* v. *Andrews,* 375 U.S. 361, 383." (Fn. omitted.)

■ In a supplemental brief filed at the request of this court, respondent argues that section 6384 is unconstitutional under authority of cases later than *Alabama* v. *King & Boozer* (1941) *supra,* 314 U.S. 1, such as *Agricultural Bank* v. *Tax Comm'n* (1968) 392 U.S. 339, 347 [20 L.Ed.2d 1138, 1143-1144, 88 S.Ct. 2173]; *United States* v. *Nevada Tax Commission* (D.Nev. 1968) 291 F.Supp. 530 (affd. 439 F.2d 435); *Kern-Limerick, Inc.* v. *Scurlock* (1954) 347 U.S. 110, 112 [98 L.Ed. 546, 551, 74 S.Ct. 403] because the ultimate "incidence" of the tax is borne by the United States. As noted, *United States* v. *Mississippi Tax Comm'n, supra,* was decided on June 4, 1973, after the cases relied upon by respondent. It is the latest expression of the United States Supreme Court on the subject which we have been able to locate.

The cases are clearly reconcilable.

The *Agricultural Bank* case, *supra,* did not involve a question of permissible taxation within federal "enclaves" under the Buck Act (4 U.S.C. § 105) but a question of whether a direct tax on an instrumentality of the federal government (a national bank) was within the scope of permissible taxation as authorized by Congress under title 12 United States Code section 548. The court held that title 12 United States Code section 548 pre-

scribed the only ways in which a state could tax a national bank as authorized by Congress, and title 12 United States Code section 548 did not authorize a sales tax or use tax on national banks. *Kern-Limerick, Inc.* v. *Scurlock, supra,* did not involve any question of a federal enclave or the applicability of the Buck Act. It involved the sale of a tractor directly to the Department of Navy through an authorized contractor. *United States* v. *Nevada Tax Commission, supra,* likewise apparently did not involve any question of state tax within a federal enclave; at least we do not find, either in the opinion of the district court or of the Court of Appeals, any reference to the Buck Act (4 U.S.C. § 105). The rationale of all of the recent cases is that *Polar Co.* v. *Andrews, supra,* and *United States* v. *Mississippi Tax Comm'n, supra,* involved cases where Congress had authorized the tax and thereby waived the sovereign immunity of the United States; the cases relied upon by respondent involve cases in which Congress had not authorized the tax and had not waived the sovereign immunity of the United States. Even if *Alabama* v. *King & Boozer, supra,* were no longer good law as respondent contends (a point which we do not decide) Congress, subsequent to that decision, enacted the Buck Act (4 U.S.C. § 105) specifically authorizing states to impose use and sales taxes within federal enclaves with the same force and effect as if they were not federal territory. Congress thereby, and to that extent only, waived the sovereign immunity of the United States.

Despite some doubt on our part that Congress has power to confer legislative sovereignty on the states contrary to the provisions of article I, section 8, clause 17 of the United States Constitution, we are bound to follow the decisions of the United States Supreme Court which uphold the validity of that congressional act. (Buck Act, 4 U.S.C. § 105.)

We determine at the outset, therefore, that California has the constitutional power to impose sales and use taxes on contractors in relation to work performed at the federal facilities involved in this case within the limits authorized by California statutes, "with the same effect as though such area was not a federal area" because Congress has expressly consented to such tax and thereby waived the sovereign immunity of the United States. (4 U.S.C. § 105.)

The next question is: To what extent has California exercised this power? We are confronted with two statutory provisions: section 6381[9] and sec-

---

[9]Section 6381 reads as follows: "There are exempted from the computation of the amount of the sales tax the gross receipts from the sale of any tangible personal property to: (a) The United States, its unincorporated agencies and instrumentalities; (b) Any incorporated agency or instrumentality of the United States wholly owned

tion 6384.[10] Section 6381 *exempts* from the sales tax "gross receipts from the sale of any tangible personal property to: (a) The United States . . . ." Section 6016[11] defines tangible personal property in effect as personal property which is in any manner "perceptible to the senses." However, section 6384 *subjects* to the sales tax gross receipts from the sale of tangible personal property "for use in the performance of contracts with the United States for the construction of improvements on or to real property in this State." The trial court concluded that if a particular item of tangible personal property was not for use in the construction of improvements on or to real property, particularly if it was machinery or equipment, it was exempt under section 6381, but that if such tangible personal property was for use in construction of improvements on or to real property in this state it was subject to sales or use taxes under section 6384. The court made elaborate findings that certain items of tangible personal property were machinery or equipment, or personal property not taxable under section 6381 and other items of personal property were found to constitute an "improvement on or to real property" which were taxable under section 6384. In finding No. VII the court found that certain personal property was used in the construction of an electrical transmission line and was exempt from sales or use tax under the Board's "long standing policy—following issuance of an opinion by the Attorney General in 1936."[12] The court further found a retail sale of capital equipment by Fedrick to Action Equipment Company "occurred outside of the State of California" and was not subject to the California sales or use tax.

■ Our first function on this appeal is to reconcile, if possible, sections 6381 and 6384. Footnote 6 in *United States* v. *Mississippi Tax Comm'n, supra,* 412 U.S. at page 390 [37 L.Ed.2d at pages 20-21], sheds a great deal of light upon this problem. It reads: "6. During the first third of this century the doctrine of intergovernmental immunity, as it applies to state taxation of allegedly federal governmental activities, went through a highly expansive phase. Among the taxes held invalid were the following: sales tax on articles sold to the Government, *Panhandle Oil Co.* v. *Mississippi,*

by the United States or by a corporation wholly owned by the United States; (c) The American National Red Cross, its chapters and branches. This exemption does not extend to the rentals payable under a lease of tangible personal property."

[10]See *ante,* footnote 2.

[11]Section 6016 reads as follows: " 'Tangible personal property' means personal property which may be seen, weighed, measured, felt, or touched, or which is in any other manner perceptible to the senses."

[12]As we shall see, *infra,* this policy was changed by the Legislature in 1965, by the enactment of section 6016.5, but the prior "policy" was held to be erroneous in *King* v. *State Bd. of Equalization* (1972) 22 Cal.App.3d 1006 [99 Cal.Rptr. 802].

277 U.S. 218; income tax on earnings from patents and copyrights, *Long* v. *Rockwood,* 277 U.S. 142; income tax on income derived by lessees of public lands, *Gillespie* v. *Oklahoma,* 257 U.S. 501.

"At the same time, however, a number of inroads or qualifications on the doctrine were established. Among the taxes held valid were the following: corporate franchise tax measured by income including that from government bonds, *Flint* v. *Stone-Tracy Co.,* 220 U.S. 107; inheritance or estate tax measured in part by government bonds, *Plummer* v. *Coler,* 178 U.S. 115; income tax on capital gain on resale of government bonds, *Willcutts* v. *Bunn,* 282 U.S. 216; income tax on net income of contractors with the Government, *Metcalf & Eddy* v. *Mitchell,* 269 U.S. 514. This trend culminated in the decision of the Court in *Alabama* v. *King & Boozer,* 314 U.S. 1.

"That trend led a commentator to note, 'Today, the United States conducts much of its business through a vast number of private parties. The trend in the U.S. Supreme Court has been to reject immunizing these private parties from nondiscriminatory state taxes, as a matter of constitutional law, even though the United States bears the economic brunt of the tax, indirectly in some instances, by inclusion in price, and more directly in many instances, by reimbursement to the contractor as an item of cost.' Rollman, Recent Developments in Sovereign Immunity of the Federal Government from State and Local Taxes, 38 N.D.L. Rev. 26, 30."

However, notwithstanding this broadening of the state versus federal government tax concept in favor of the states, we have found no decision of the United States Supreme Court which sanctions a state tax directly on the federal government, its functions, or instrumentalities. The cases relied upon by respondent, *Agricultural Bank* v. *Tax Comm'n, supra,* and *Kern-Limerick, Inc.* v. *Scurlock, supra,* clearly hold that such direct tax on a federal instrumentality or on the federal government is unconstitutional unless authorized by Congress. One distinction between sections 6381 and 6384 is that the former refers to tangible personal property generally and, hence, may be removed by the United States for use by it outside the State of California, whereas section 6384 refers to tangible personal property which is used to improve real property within the boundaries of California and which will therefore presumably remain within the State of California. Sales and use taxes imposed upon the latter type of personal property would be permissible under authority ceded by Congress to the states under the "Buck Act" (4 U.S.C. § 105), whereas the Legislature may have concluded that the former type of personal property apparently would not come within the scope of that congressional authorization.

Regardless of the legislative motivation, it is manifest that since section 6381 exempts from sales and use taxes all tangible personal property sold to the United States, section 6384 is an exception which imposes sales and use taxes on a certain type of personal property sold or resold to contractors under contract to the United States, to wit, personal property "for use in the performance of contracts with the United States for the construction of improvements on or to real property in this state." The foregoing rationale is substantiated by Ruling 12,[13] adopted by appellant pursuant to its authority under section 7051. Sections 122 and 123 of title 18 of the California Administrative Code read in part as follows:

"122. Improvements. Improvements consist of buildings, structures, fixtures, and fences erected on or affixed to land; planted fruit and nut trees and vines that are taxable, other than date palms between four and eight years of age; and planted ornamental trees and vines. Where a substantial amount of materials other than land, such as concrete, is added to an excavation, both the excavation and the added materials are improvements,

---

[13]Ruling No. 12 reads as follows:

"RULING No. 12 (Admin. Code 1922). United States Contractors

"References: Section 6384 and Section 9 of Chapter 681, Statutes of 1941.

"Either the sales tax or the use tax applies with respect to sales of tangible personal property (including materials, fixtures, supplies and equipment) to contractors or subcontractors for use in the performance of contracts with the United States for the construction of improvements on or to real property in this State. The fact that the contract may provide principally for the manufacture or acquisition of tangible personal property is immaterial. The sales tax, but not the use tax, applies even though the contractor purchases the property as the agent of the United States.

"Tax does not apply to sales of 'machinery and equipment' to contractors or subcontractors. As used herein, the term 'machinery and equipment' means property to which each of the following conditions applies: 1. It is *not* used by the contractor in *making the improvements* (as distinguished from supplies and tools, such as steam shovels, cranes, trucks, and hand or power tools, actually used to perform construction work). 2. It either is not attached to the realty or, if attached, is readily removable as a unit (as distinguished from 'fixtures'). (See below.) 3. It is installed for the purpose of performing a manufacturing operation or some other function not essential to the structure itself. 4. Title to the property passes to the United States before the contractor makes any use of it.

"Examples of 'Machinery and Equipment' are: Portable machines, equipment and tools; Furniture; Vehicles; Lathes, drills, presses, cranes, and other machines and apparatus which may be fastened to the realty but which can be removed without damage to the structure or without substantially impairing its use.

" 'Fixtures,' as distinguished from 'machinery and equipment,' are things which are necessary to a structure and so firmly attached to the realty as to constitute a part of the structure. They are essential to the use of the building or other structure, and include such things as:

"Lighting fixtures; Plumbing fixtures; Furnaces, boilers and heating units; Air conditioning units; Refrigeration units; Cabinets, counters and lockers; Telephone switchboards and instruments; Elevators, hoists, and conveying units; Awnings and venetian blinds; Burglar alarm and fire alarm fixtures; Vault doors and equipment."

except that whenever the addition of other materials is solely for the drainage of land to render it arable or for the drainage or reinforcement of land to render it amenable to being built upon, the land, together with the added materials, remains land. In the case of property owned by a county, municipal corporation or a public district, fill that is added to taxable land is an improvement.

"123. Tangible Personal Property. All property that may be seen, weighed, measured, felt, or touched, or which is in any other manner perceptible to the senses, except land and improvements, is tangible personal property."

It is manifest that by its rules and regulations appellant concedes that "Machinery and Equipment" sold to the United States is not subject to sales or use tax if it is not attached to realty, or if attached to realty, it is readily removable as a unit without damage to such real property, and is not a "fixture."

In its brief, appellant claims that the trial court committed error in classifying approximately 16 items covered by Exhibit 2 to the stipulation of facts as tax exempt. These items aggregate $11,499.42 in total taxes.[14]

---

[14]

| | | "Measure of Tax (Cost to Plaintiff) | Tax | Interest to 6-30-67 | Total |
|---|---|---|---|---|---|
| (a) | Manholes consisting of cement, frames and covers and reinforcing steel | $ 16,736.00 | $ 669.44 | $ 125.14 | $ 794.58 |
| (b) | Sand and gravel used as backfill, etc. | 23,434.00 | 937.36 | 150.79 | 1,088.15 |
| (c) | Contractors consumable supplies | 1,567.00 | 62.68 | 12.07 | 74.75 |
| (d) | Reinforcing steel and mesh placed in cement | 1,493.00 | 59.72 | 13.11 | 72.83 |
| (e) | Reinforcing steel and mesh in substations | 10,716.00 | 428.64 | 49.29 | 477.93 |
| (f) | Runway lights and bases | 3,076.00 | 123.04 | 17.70 | 140.74 |
| (g) | Taxiway and parking area flood lights | 2,176.00 | 87.04 | 17.66 | 104.70 |
| (h) | Transformer in night lighting vault | 6,250.00 | 250.00 | 54.81 | 304.81 |
| (i) | Switch gear for night lighting vault | 8,101.00 | 324.04 | 68.42 | 392.46 |
| (j) | Distance markers | 1,286.00 | 51.44 | 9.68 | 61.12 |
| (k) | Various parts for runway and other lights (embedded in cement) | 1,609.00 | 64.36 | 12.03 | 76.39 |

Findings VI, VII, VIII, X and XII described various items of property in general terms. For example, finding VI recites in part: "The items included in the above description which have been taxed by the Board are reinforcing steel, transformers, switch gear, distance markers and miscellaneous items. These items are found to be machinery and equipment. The tax measure of these items is $47,828.00. The amount of the assessment paid by Fedrick on the above items was $2,270.01, comprised of $1,913.12 in taxes and $356.89 interest."

It is impossible for us to correlate the claims of error by appellant with the findings by the court because of the general descriptive terms used by the trial court. Obviously, we cannot tell what is covered by the term "miscellaneous items." However, in any event, it is difficult for us to visualize how "reinforcing steel" if used in its ordinary sense could ever be classified as machinery and equipment. The term is normally used to refer to steel used to reinforce structural concrete. However, we have concluded that it is unnecessary for us to try to reconcile the court's findings with the parties' stipulation because it is manifest that despite the fact that the trial court did attempt to distinguish beween personal propery, which was machinery or equipment and therefore tax exempt under section 6381, and personal property used to improve real property, which was subject to tax under section 6384, it did commit error in reliance on Board policy based on a 1936 Attorney General opinion that personal property used in construction of an electrical transmission line should be classified as personal property not used to improve real property. As we have previously indicated, this Board policy and Attorney General opinion were held to be erroneous in *King* v. *State Bd. of Equalization, supra,* 22 Cal.App.3d

| | | "Measure of Tax (Cost to Plaintiff) | Tax | Interest to 6-30-67 | Total |
|---|---|---|---|---|---|
| (l) | Transformer in night lighting vault | $ 3,308.00 | $ 132.32 | $ 30.85 | $ 163.17 |
| (m) | Generator and switch gear | 72,794.00 | 2,911.76 | 563.34 | 3,475.10 |
| (n) | Domestic water and sewer lines | 74,936.00 | 2,997.44 | 458.34 | 3,455.78 |
| (o) | Storage tank for generator | 1,932.00 | 77.28 | 17.00 | 94.28 |
| (p) | Various items not coded but determined to be parts of buildings and other structures (net of credit given for items of equipment purchased tax-paid) | 15,706.00 | 628.24 | 94.39 | 722.63 |
| | Total | $245,120.00 | $9,804.80 | $1,694.62 | $11,499.42" |

1006. The Court of Appeal held that although the electrical transmission line installed in place was not subject to sale or use tax as an entity, the component parts used therein were personal property and subject to sales or use taxes. The court said (22 Cal.App.3d at pp. 1011-1012): ". . . The statute interpreted by the Attorney General's 1936 opinion has no relevance here, because it is not imported into the scheme of sales taxation by any phase of the Sales and Use Tax Law. We have concluded that the present transaction is not a 'sale' within the meaning of section 6006; rather that it is vulnerable to the sales tax only to the extent established by the criteria for construction contracts generally. In view of that conclusion, the administrative interpretation of the sales tax act stemming from the Attorney General's 1936 property tax opinion is incorrect. The rule giving weight to contemporaneous administrative construction is not evoked when the construction is incorrect. (*Atlantic Oil Co.* v. *County of Los Angeles* (1968) 69 Cal.2d 585, 599 [72 Cal.Rptr. 886, 446 P.2d 1006].)"

With reference to construction contracts generally, the court said (22 Cal.App.3d at pp. 1013-1014): "Rule 1521 defines a construction contract as one for creating *a building or other structure on land,* but not one for the sale and installation of machinery and equipment. It divides the personal property going into construction jobs into two categories: first, *materials,* that is, various kinds of tangible personal property which in combination lose their identity and become an integral part of the completed structure; second, *fixtures,* which become an accessory to the building and do not lose their identity when placed or installed. In effect, Rule 1521 classifies the contractor as a consumer of *materials* who must pay a sales tax on his purchases; classifies him as a retailer of *fixtures,* who must charge his customer a tax measured by the retail selling price which, in the case of a lump sum contract, is the cost price of the fixture to the contractor."

We have concluded that *King* v. *State Bd. of Equalization, supra,* is a correct statement of law, and that the principles which it enunciates were not followed by the trial court here. It is manifest here that the trial court relied upon the Board policy and 1936 Attorney General opinion declared incorrect or inapplicable in the *King* case. It is likewise clear that the trial court applied the erroneous Board policy and Attorney General's opinion to all lines which transmitted electrical energy such as airport runway lights, including manholes constructed for use in connection with such runway lights, even though such improvements were not electrical transmission lines in the normally accepted sense of the term. Even though the findings characterize such improvements as "machinery and equipment," it is manifest that they were not machinery or equipment in the accepted

sense of the words, but were personal property used for improvements of real property in this state and therefore taxable within the meaning of section 6384. Since such legally erroneous findings appear to be interwoven with all other findings, we cannot segregate them, and it is necessary to reverse the judgment in its entirety.

It is true that in 1965 the Legislature codified the Board policy and 1936 Attorney General's opinion in section 6016.5, but such act was prospective in nature only (Stats. 1965, ch. 1960, § 3) and does not apply to this case. (See *King* v. *State Bd. of Equalization, supra,* 22 Cal.App.3d at p. 1009.)

What we have said above applies with equal force to appellant's counterclaim. Finding XIV, that the personal property therein referred to was all machinery and equipment, was likewise erroneous. Some items obviously were not. With proper findings the Board may well be entitled to judgment on its counterclaim and conceivably the Board may not be estopped to assert it. (See *Market St. Ry. Co.* v. *Cal. St. Bd. of Equal.,* 137 Cal.App.2d 87, 100-101 [290 P.2d 20].)

The trial court correctly concluded that the sale by Fedrick of certain equipment which the court found occurred in Arizona was not subject to California sales or use taxes. Although the evidence was sketchy, it was sufficient to support Finding XIII.

For the reasons stated hereinabove, the portion of the judgment appealed from is reversed.

Cobey, Acting P. J., and Allport, J., concurred.

A petition for a rehearing was denied March 20, 1974, and respondent's petition for a hearing by the Supreme Court was denied April 24, 1974.