**Bob BULLOCK, Comptroller of Public Accounts et al., Appellants,**

v.

**W & W VENDING AND FOOD SERVICE OF TEXAS, INC., Appellee.**

**No. 1407.**

Court of Civil Appeals of Texas, Tyler.

Jan. 22, 1981.

Rehearing Denied Feb. 19, 1981.

R. L. Lattimore, Asst. Atty. Gen., Austin, for appellants.

Charles B. Russell, Russell, Tate & Gowan, Wichita Falls, for appellee.

MOORE, Justice.

Appellee, W & W Vending and Food Service of Texas, Inc., instituted suit against Bob Bullock, Comptroller of Public

Accounts,[1] to recover sales taxes paid under protest. The vending machine company alleged that between March 1, 1975, and June 30, 1977, sales taxes were paid on food and beverages sold at Sheppard Air Force Base in Wichita Falls, Texas, under a contract with the Army and Air Force Exchange Service (AAFES) which is an integral part of the United States Government. The vending machine company alleged that it was not liable for the taxes assessed against it because the company was merely an agent, servant or employee of the United States Government under the terms of its contract with AAFES and since it was only an agent or an instrumentality of the United States Government, it was exempted from the payment of sales taxes. Appellants answered with a general denial and took the position that the vending company was an independent contractor rather than a mere servant or employee of the United States Government and was therefore liable for the sales taxes paid under protest. After a trial before the court, sitting without a jury, the court ruled in favor of the vending company and entered a judgment against the appellants ordering a refund of the sales taxes paid under protest in the amount of $19,146.18, from which judgment appellants perfected this appeal. For convenience, appellants will hereinafter be referred to as "State" and appellees will be referred to as "Concessionaire" or "Vending Service."

By a single point of error, State contends that the trial court erred in refusing to hold that Concessionaire was an independent contractor and liable for the tax as a matter of law. We sustain State's contention and accordingly reverse and render judgment that Vending Service take nothing.

In 1940, with passage of the Buck Act (4 U.S.C. sec. 101 et seq. 1977), Congress authorized the States to levy and collect certain state taxes upon transactions occurring on federal enclaves. That authorization with respect to state and local sales taxes is found in 4 U.S.C. sec. 105(a), which provides as follows:

> No person shall be relieved from liability for payment of, collection of, or accounting for any sales or use tax levied by any State, or by any duly constituted taxing authority therein, having jurisdiction to levy such a tax, on the ground that the sale or use, with respect to which such tax is levied, occurred in whole or in part within a Federal area; and such State or taxing authority shall have full jurisdiction and power to levy and collect any such tax in any Federal area within such State to the same extent and with the same effect as though such area was not a Federal area.

At the same time of the passage of the Buck Act, however, Congress exempted from the taxes thus authorized to be collected "the United States or any instrumentality thereof." This exemption is found in 4 U.S.C. sec. 107(a), which provides as follows:

> The provisions of sections 105 and 106 of this title shall not be deemed to authorize the levy or collection of any tax on or from the United States or any instrumentality thereof, or the levy or collection of any tax with respect to sale, purchase, storage, or use of tangible personal property sold by the United States or any instrumentality thereof to any authorized purchaser.

Between March 1, 1975, and June 30, 1977, Concessionaire operated a food vending service on the Sheppard Air Force Base at Wichita Falls, Texas. Said services were rendered pursuant to a contract with the Army and Air Force Exchange Service (AAFES), for the concession operation of a full line food vending service. When in 1978, Bob Bullock, Comptroller of Public Accounts of the State of Texas, assessed a $19,146.81 state sales tax deficiency against Concessionaire based on its concession sales made on the base, Concessionaire paid the taxes under protest pursuant to Tex.Tax.–Gen.Ann. art. 1.05.

---

1. In compliance with statute, the State Treasurer and Attorney General were also sued as defendants (V.A.T.S. Tax.–Gen. art. 1.05(2)).

The State of Texas, however, is the real party at interest.

Concessionaire herein seeks a refund of those taxes paid under protest, alleging that since it was merely an agent of the United States Government under the terms of its contract with AAFES, and not an independent contractor, it was entitled to the exemption granted in Section 107(a) of the Buck Act. (See also Article 20.04(H)(1) and (2), Tex. Tax.–Gen.Ann.) The state on the other hand contends that Concessionaire was an independent contractor under the terms of its contract with AAFES, and thus it was not entitled to the exemption granted in Section 107(a) of the Buck Act, and it was required to collect and pay the taxes levied by Article 20.02 of the Limited Sales, Excise and Use Tax Act, Chapter 20, Title 122A, Tex.Tax.–Gen.Ann. (See also Article 20.01(E), Tex. Tax.–Gen.Ann.)

Army Regulation No. 62–20/Air Force Regulation No. 147–14 (State's Ex. 1), although granting to AAFES the same immunity accorded the U. S. Government from the taxes of the States, provides at Paragraph 5–2.d. as follows:

Concessionaires and other independent contractors are not entitled to claim AAFES immunity from taxation. Concessionaires must collect and remit applicable sales and use taxes as required by state law pursuant to the provisions of 4 U.S.C. 105. Contractors may be liable for state sales and use taxes as provided by state law.

In accordance with Army Regulation No. 60–20/Air Force Regulation No. 147–14, appellee Concessionaire is everywhere described in its contract with AAFES as either a "contractor" or "concessionaire." Under the terms of the contract the parties agreed that the contract was to be performed in accordance with the following specifications.

1. The contractor will not present represent himself to be an agent or representative of the AAFES, the United States, or any military department.

2. Contractor shall at all times hold and save harmless the United States and the AAFES, its agents, representatives and employees from any and all suits, claims, charges and expenses which arise out of acts or omissions of Contractor, its agents, representatives, or employees.

3. Concessionaire assumes complete and sole liability for all federal, state, host country, and local taxes applicable to the property, income and transactions of the Concessionaire, and where required by applicable laws and regulations, will collect and remit to the state applicable sales taxes.

4. The Concessionaire shall pay to the AAFES the fee percentage of the total combined sales of all locations included in the contract in accordance with the fee schedule in Exhibit E.

5. The Concessionaire shall furnish and train at his expense a sufficient number of qualified employees for the efficient performance of this contract.

6. The "Employee Classification," or "statement of equivalent AAFES rates is required to be made by AAFES in accordance with . . . [41 U.S.C. 351(a)(5)], but a successful offer or under this solicitation *WILL NOT* be contractually obligated to pay the rate set forth . . . . The following classes of service employees would be utilized by AAFES *if* the activity were a direct operation of AAFES . . . . CONTRACTOR IS NOT OBLIGATED TO PAY RATES EQUAL TO OR ABOVE THOSE SPECIFIED ON THIS PAGE.

7. [Route and repair] personnel will wear a standard commercial uniform provided by the concessionaire and which identifies the concessionaire's firm . . . .

8. The Concessionaire is responsible to AAFES for establishing effective management controls to achieve the standards of operation established in AAFES directives or manuals . . . for exercising sound management practices, and for establishing internal control procedures . . . for a complete and accurate accounting of all transactions.

9. Any subcontractor . . . approved and used in connection with this contract is the agent of the Contractor and not the agent of AAFES.

10. The Concessionaire shall furnish at his expense all merchandise inventory, tools of the trade, supplies and materials required for the efficient operation of the activity.

11. Concessionaire shall his own expense furnish, install and move all equipment, furniture and fixtures which are not supplied by AAFES and which are necessary for performing the type of service herein specified [including vending machines].

12. Losses resulting [from any act of vandalism or machine break-ins] and from slugs will be absorbed by the concessionaire.

13. All customer complaints, including but not limited to claims for loss or damage to customer's property, will be resolved at Concessionaire expense.

14. Concessionaire shall pay the equitable value of such utilities/service as are furnished by the Government in the amount determined by the contracting offeror, as stated in the Schedule.

15. Contractor will at his own expense, obtain all necessary permits, give all notices, pay all license fees, and comply with all laws, rules, ordinances, and regulations relating to the preservation of the public health or applicable to the service or business carried on under this contract. The burden of determining applicability of licensing requirements, laws, ordinances, and regulations for contractor and his employees rests with the contractor.

16. The Concessionaire will maintain in full force and effect during the period of the contract, the insurance coverage set out in Exhibit F.

The contract also provided that Concessionaire agreed not to sell any products other than these specified in the contract; all personal servicing or repairing the Food and Drink Machines were required to have health cards at Concessionaire's expense; Concessionaire's employees were to sweep and keep clean the area near the vending machines; Concessionaire agreed that improper conduct by an employee as determined by the contracting officer would constitute grounds for dismissal or removal from work performed under the contract; it was agreed that customer contact employees were to be well groomed and long hair, sideburns, and mustaches were subject to the approval of the contracting officer; Concessionaire agreed to comply with all laws including labor laws; and Concessionaire agreed to sell food and beverage items at prices stipulated in the contract, but the contract provided it could be amended by written agreement signed by both parties.

The contract was for a period of two years but was subject to termination by either party for breach of contract or upon 30 days written notice. The contract further provided that any dispute involving a question of fact not disposed of by agreement was to be decreed by AAFES' contracting officer with the Concessionaire having a right of appeal to the Armed Services Board of Contract Appeals.

Bob Dunn, President of Concessionaire, W & W Vending and Food Service of Texas, Inc., testified that Concessionaire was hired for the special skill it possessed in the area of food vending services, a skill not possessed by AAFES, that food vending services are the principal business activity of Concessionaire, that AAFES never attempted to prohibit Concessionaire from performing similar duties at other locations for other customers, and that its duties at Sheppard Air Force Base during the period in question were performed in substantial compliance with the contract in question. There is no evidence that AAFES instructed contractor's employees as to how the vending machines were to be refilled; or where contractor would purchase the food and beverages; or how the area around the machines were to be cleaned; or how the machines were to be repaired or operated. Nor is there any evidence that AAFES instructed Vending Service as to the means and manner of transporting the food and beverage from the supplier to the air force base.

The essential facts do not appear to be in dispute. The sole legal issue is whether

AAFES, under the contract in question, retained such supreme choice and control over the details of the vending operations sufficient to constitute Concessionaire Vending Service a mere agent or servant of AAFES and thus render the sales tax upon the vending operations exempt by reason of such operations being considered as transactions of the governmental agency AAFES, or whether Concessionaire was an independent contractor with its vending operation sales subject to the tax.

Whether or not the relationship of master and servant or employer-employee existed between the AAFES and the Vending Company depends on whether AAFES had the right to control the Vending Company in the details of the work to be performed in the acquisition and sale of food and beverage through coin operated vending machines. *Newspapers, Inc. v. Love*, 380 S.W.2d 582, 581 (Tex.1964); *Texas Co. v. Wheat*, 140 Tex. 468, 168 S.W.2d 632 (1943); *Carter Publications, Inc. v. Davis*, 68 S.W.2d 640, 641 (Tex.Civ.App.–Waco 1934, writ ref'd); 38 Tex.Jur.2d Master and Servant, sec. 240 p. 490.

The distinction between an independent contractor and an agent or employee is not always easy to determine, and there is no uniform criterion by which they can be differentiated. 41 Am.Jur.2d Independent Contractors, sec. 7, p. 749. In making such determination, the court in *Industrial Indemnity Exchange v. Southard*, 138 Tex. 531, 160 S.W.2d 905 (1942) laid down the following rule:

The general rule relating to independent contractors rests upon certain recognized tests; although such tests are not necessarily concurrent with each other, nor is each test in itself controlling. Such tests are: (1) The independent nature of his business; (2) his obligation to furnish necessary tools, supplies, and material to perform the job; (3) his right to control the progress of the work, except as to final results; (4) the time for which he is employed; and (5) the method of payment, whether by time or by the job. There are other tests, but the foregoing

are considered the essential tests upon which such rule is based.

■ Our courts have repeatedly held that an employer has a right to exercise such control over an independent contractor that is necessary to insure the performance of the contract, in order to accomplish the results of the contract contemplated by the parties, without thereby making the contractor an employee of such company. *J. A. Robinson Sons, Inc. v. Ellis*, 412 S.W.2d 728, 735 (Tex.Civ.App.–Amarillo 1967, writ ref'd n.r.e.); *Mid-Continental Freight Lines v. Carter Publication, Inc.*, 336 S.W.2d 885 (Tex.Civ.App.–Fort Worth 1960, writ ref'd); *Industrial Indemnity Exchange v. Southard*, supra.

In 41 Am.Jur.2d Independent Contractors sec. 12, p. 758, it is said:

The control of workmen doing actual manual labor in the performance of work is an important element in determining the status of a contractor as an independent contractor. The fact that the contractor employs, pays, and has full power to control workmen is virtually decisive of his independence. Incidental powers retained by the employer over laborers, as the right to compel contractors to discharge workmen who are incompetent, although tending to show the contractors' subserviency, do not necessarily require that the contractors must be considered mere servants.

■ Applying the tests prescribed by the above decisions to the facts of this case, we have concluded that as a matter of law Vending Service occupied the status of an independent contractor. The details of the work to be performed by Vending Service was the acquisition and sale of food and beverage through coin operated vending machines owned and operated by the employees of Vending Service. While the contract contained detailed specifications with regard to how the end result was to be accomplished, there is no evidence of a true agency relationship here. The end result to be accomplished was the supplying of food and beverage to personnel stationed at the Sheppard Air Force base. Vending Service

purchased the food and beverage and hired and paid its employees; it used its own vending machines, kept them repaired and supplied them with food and beverage. There is nothing in the contract giving AAFES a right to control the employees of Vending Service in performing any of the foregoing details of their employment nor is there any evidence that AAFES actually controlled them in performing such tasks. It is our view that the evidence fails to establish an agency relationship, but rather is one of independent contractual service to obtain a particular result, namely supplying food and beverages through vending machines. Inasmuch as AAFES did not have a right to control Vending Service's employees in performing the details of such work, we hold that Vending Service was, as a matter of law, an independent contractor and was liable for the payment of sales taxes.

Accordingly, the judgment is reversed and judgment is hereby rendered that appellee, W & W Vending and Food Service of Texas, Inc., take nothing.