AIRPORT CONSTRUCTION AND MATERIALS,
INC. and NATIONAL BONDING AND ACCIDENT
INSURANCE COMPANY *v.* Don BIVENS, d/b/a
DON BIVENS CONSTRUCTION COMPANY

83-78                                    649 S.W.2d 830

Supreme Court of Arkansas
Opinion delivered May 2, 1983

*Clark, McNeil & Adkisson,* for appellants.

*Friday, Eldredge & Clark,* by: *Bill S. Clark;* and *David Orsini,* for appellee.

STEELE HAYS, Justice. On September 5, 1978, Airport Construction and Materials, Inc. entered into a contract with the United States for the repair of streets at the Little Rock Air Force Base. On April 11, 1979, ACM subcontracted with Bivens for part of the work. A dispute arose as to the amount ACM was to pay Bivens, and this suit was brought by Bivens against ACM and its bonding company, National Bonding and Accident Insurance Company.

ACM defended on the ground that Bivens was not a licensed contractor under Ark. Stat. Ann. § 71-701[1] and

---

[1]71-701. Contractor defined — Exceptions. — For the purposes of this Act [§§ 71-701 — 71-720], a "contractor" is defined to be any person, firm, partnership, copartnership, association, corporation, or other organization, or any combination thereof, who for a fixed price, commission, fee or wage attempts to or submits a bid to construct, or contracts or undertakes to construct, or assumes charge, in a supervisory capacity or otherwise, or to manage the construction, erection, alteration, or repair, or has or have constructed, erected, altered, or repaired, under his, their or its direction, any building, highway, sewer, grading or any other improvement or structure, except single-family residences, when the cost of the work to be done, or done, in the State of Arkansas by the contractor, including but not limited to labor and materials, is twenty thousand dollars ($20,000.00), or more,[.] It is the intention of this definition to include all improvements or structures, excepting only single-family residences.

Architects and engineers, whose only financial interest in a project shall be the architectural or engineering fees for preparing plans, specifications, surveys, and such supervision as is customarily furnished by architects and engineers, are specifically excluded from this Act.

therefore under § 71-713[2] Bivens was not permitted to bring any action in law or equity to enforce a contract entered into in violation of § 71-701. ACM also disputes the amount awarded Bivens. National Bonding made a motion to dismiss the complaint, on the grounds that the state court was without jurisdiction, that under the Miller Act (40 U.S.C. § 270a-270e), the suit must be brought in federal court. The motion was denied. The trial court found § 71-701 and § 71-713 inapplicable to the case and awarded $19,479.25 to Bivens. ACM and National Bonding have appealed.

I

ACM argues that the trial court erred in refusing to dismiss the case for appellee Bivens' failure to comply with the licensing statute which would preclude him from bringing suit under § 71-713. Bivens relies on *Leslie Miller Inc.* v. *State of Arkansas*, 352 U.S. 187 (1956). In that case the U.S. contracted with Miller for construction work on an Air Force base in Arkansas. Miller was not licensed under § 71-701 and the state filed an information accusing him of violating § 71-713, which makes such an activity a mis-

---

[2]71-713. Penalties for operating without certificate or giving board false evidence. — Any contractor who for a fixed price, commission, fee or wage, attempts to or submits a bid or bids to construct or contracts to construct, or undertakes to construct, or assumes charge in a supervisory capacity or otherwise, of the construction, erection, alteration or repair, of any building, highway, sewer, grading or any other improvement or structure, when the cost of the work to be done by the contractor, including but not limited to labor and materials, is twenty thousand dollars ($20.000.00) or more without first having procured a license to engage in the business of contracting in this state, or who shall present or file the license certificate of another, or who shall give false or forged evidence of any kind to the Board, or any member thereof, in obtaining a certificate of license, or who shall impersonate another, or who shall use an expired or revoked certificate of license, shall be deemed guilty of a misdemeanor, and shall be liable to a fine of not less than one hundred dollars ($100.00), nor more than two hundred dollars ($200.00) for each offense, each day to constitute a separate offense. No action may be brought either at law or in equity to enforce any provision of the contract entered into in violation of this act [§§ 71-701 — 71-720]. The doing of any act or thing herein prohibited by any applicant or licensee, shall in the discretion of the Board constitute sufficient grounds to refuse a license to an applicant or to revoke the license of a licensee.

demeanor. Miller was found guilty, this court affirmed, 225 Ark. 285, 281 S.W.2d 946 (1955), and the U.S. Supreme Court reversed. ACM's basic contention is that while that case involved a contractor in a direct relationship with the federal government, the contract here is a private matter and the federal government is only coincidentally involved. ACM points out that the subcontract was made seven months after its contract with the U.S. and consequently the prime contract was in no way influenced by ACM's subcontract with Bivens.

A reading of *Miller,* however, supports the trial court's finding that the statutes in question are inapplicable to this case, and the stated rationale of that case would extend to the subcontractor here. This is not simply a private contract with the federal government coincidentally involved. The *Miller* court reviewed and compared federal and state requirements for licensing contractors and found conflict with the action each would take to ensure reliability of persons and companies contracting with the federal government. "Subjecting a federal contractor to the Arkansas contractor license requirements would give the state's licensing board a virtual power of review over the federal determination of [the best candidate] and would thus frustrate the expressed federal policy of selecting the lowest responsible bidder." *Miller* at 258.

Amplification of this policy makes it clear that were even the subcontractor subject to state regulations, the federal policy would be frustrated. *Miller* goes on to quote from *Johnson* v. *State of Maryland,* 254 U.S. 51, 41 S.Ct. 16 (1920):

> "It seems to us that the immunity of the instruments of the United States from state control in the performance of their duties extends to a requirement that they desist from performance until they satisfy a state officer upon examination that they are competent for a necessary part of them and pay a fee for permission to go on. Such a requirement does not merely touch the Government servants remotely by a general rule of conduct; it lays hold of them in their specific attempt to obey orders

and requires qualifications in addition to those that the Government has pronounced sufficient. *Miller* at 259.

As *Miller* points out, when the government determines whom it will choose as the "responsible bidder" (pursuant to the Armed Services Procurement Act) a number of factors are considered. "[I]t involves an evaluation of the bidder's experience, facilities, technical organization, reputation, financial resources and other factors." The Court notes that the Armed Services Procurement Regulations defining a responsible contractor include:

> (c) Has the necessary experience, organization, and technical qualifications and has or can acquire the necessary facilities (*including probable subcontractor arrangements*) to perform the proposed contract. 32 CFR § 2-406-3, *Miller* at 258. (our emphasis)

The government has chosen a specific bidder because it has determined that bidder can adequately fulfill the above stated requirements, including the choice of a competent subcontractor. Whether the federal government had relied specifically on a certain subcontractor, does not change the reasons for the policy. Were a government contract subject to interruption because of varying state requirements, when the federal government has already determined that the contractor has the capability to fulfill its requirements and control the project to its satisfaction, the supremacy policy would be largely undermined.

ACM also notes that the State of Arkansas has a legitimate interest in the standards of [bidder] responsibility, but such a point is without merit where the contract, as here, is made by the federal government, for work to be performed on federal property for federal use.

## II

National Bonding argues that the trial court erred in its refusal to dismiss the complaint as to National for lack of jurisdiction. The bond furnished by National was a Miller Act Bond (required for specified federal construction

projects under 40 U.S.C. § 270a-270e), which National argues gives federal courts exclusive jurisdiction. The requirement of a performance bond and payment bond is found in 40 U.S.C. § 270a. Section 270b (b) dictates the proper U.S. District Court in which any suit on a Miller Act Bond must be brought. Bivens argues that § 270b (b) is only a venue statute, and such a suit may be brought in state court as well as federal. We agree that this section indicates venue, but only in the context of venue within the federal system. It appears well settled that federal jurisdiction is exclusive on any Miller Bond suit. See 40 U.S.C. § 270b, n.7; 100 ALR 2d 456.

Bivens argues further that his suit was not based on the Miller Act, but rather on National's liability under its payment bond under state law. But the plain language of the Miller Act under § 270a clearly requires both a performance and a *payment* bond under this contract. Bivens offers no basis for release from that clear language. He does cite *Lichter* v. *Henke,* 35 F.Supp. 388 (W.D. Mo. 1940), but that case does not sustain the point. There, the plaintiff sued on a bond under the Miller Act in federal court, but maintained a second count for breach of contract. The district court merely held that the breach of contract action was not within the jurisdiction of that court and must be brought in state court.

A similar contention was made in *General Equipment Inc.* v. *U.S. Fidelity and Guaranty Insurance Co.,* 292 So.2d 806 (La. App. 1974). Appellants claimed that *apart* from the payment bond under the Miller Act, there existed a separate surety agreement upon which they were suing. The court found the claim unsubstantiated by the evidence. But the court stated *and* the appellants agreed that a "suit against a surety on a performance and *payment* bond [under the Miller Act] must be brought in the U.S. District Court." (our emphasis) *General Equipment* at 807.

### III

Finally, ACM argues that the trial court erred in calculating the amount due Bivens under his subcontract.

The judgment includes two items which ACM disputes:

| Item 4 | 1,100 tons SB2 at $8.00 | $8,800.00 |
| Item 8 | 1,903 tons SB2 at $8.00 | $15,224.00 |

ACM insists that Bivens did not furnish the 1,100 tons of SB2 under item 4, nor the 1,903 tons of SB2 under item 8 and contends there is no evidence that items 4 and 8 were furnished by Bivens. Admittedly, there is confusion over these items, which doubtless stems from a change in the specifications of the contract which the parties agreed to while the contract was in progress. Bivens testified that after the work had progressed for several days he was asked by ACM if he would agree to switch to asphalt in place of SB2 as a base material in the patching process, which would enable the work to move more rapidly. (T. 88-92). He testified that he agreed on the understanding that ACM was to supply the asphalt. Evidently the trial court accepted that testimony and while we cannot independently verify these two disputed items, we are satisfied that the trial court accurately computed what was due. For one thing, Bivens submitted an invoice to ACM dated August 17, 1979, showing a balance of $19,479.25 due him. When ACM answered on September 17, 1979, it acknowledged in effect the correctness of "Item 4, Base Course 1,100 tons, $8.00, $8,800." Thus, the argument that Bivens is not entitled to this amount loses its force. As to item 8, we are unable to identify it in the testimony, but we can rely, and do, on the fact that two exhibits to Bivens' testimony were introduced in evidence consisting of copies of his itemized invoices to ACM showing the balance due of $19,470.25, which coincides (approximately) with the amount determined by the trial court to be due, i.e. $19,282.00. We conclude that the trial court's calculations are not clearly erroneous. ARCP 52.

The judgment is affirmed as to appellant, Airport Construction and Materials, Inc., and reversed and dismissed as to appellant, National Bonding and Insurance Company.