**UNITED PACIFIC INSURANCE CO.,**
Appellant (Defendant),

v.

**WYOMING EXCISE TAX DIVISION, DEPARTMENT OF REVENUE AND TAXATION, Appellee (Plaintiff).**

No. 85–15.

Supreme Court of Wyoming.

Jan. 24, 1986.

James L. Applegate and Glenn Parker of Hirst & Applegate, Cheyenne, for appellant.

A.G. McClintock, Atty. Gen., Peter J. Mulvaney, Deputy Atty. Gen., Michael L. Hubbard, Sr. Asst. Atty. Gen., Robert J. Walters, Asst. Atty. Gen., Cheyenne, for appellee.

Before THOMAS, C.J., and ROSE,* ROONEY,** BROWN and CARDINE, JJ.

ROSE, Justice.

The trial court entered judgment for unpaid Wyoming sales and use taxes against the surety of a nonresident prime contractor performing work in Yellowstone National Park under a contract with the United States government. We will affirm.

Bernal Construction Company (Bernal), a nonresident prime contractor, was awarded a contract to build a water system in Yellowstone National Park. Appellant United Pacific Insurance Company (United Pacific) agreed to become Bernal's surety on Miller Act bonds (40 U.S.C. § 270a).[1] The Wyo-

---

* Justice Rose circulated the opinion of the Court October 31, 1985, and retired November 1, 1985.

** Retired November 30, 1985.

1. 40 U.S.C. § 270a provides:
"(a) Before any contract, exceeding $25,000 in amount, for the construction, alteration, or repair of any public building or public work of the United States is awarded to any person, such person shall furnish to the United States the following bonds, which shall become binding upon the award of the contract to such person, who is hereinafter designated as 'contractor':
"(1) A performance bond with a surety or sureties satisfactory to the officer awarding such contract, and in such amount as he shall deem adequate, for the protection of the United States.
"(2) A payment bond with a surety or sureties satisfactory to such officer for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person. Whenever the total amount payable by the terms of the contract shall be not more than $1,000,000 the said payment bond shall be in a sum of one-half the total amount payable by the terms of the contract. Whenever the total amount payable by the terms of the contract shall be more than $1,000,000 and not more than $5,000,000, the said payment bond shall be in a sum of 40 per centum of the total amount payable by the terms of the contract. Whenever the total amount payable by the terms of the contract shall be more than $5,000,000 the said payment bond shall be in the sum of $2,500,000.
"(b) The contracting officer in respect of any contract is authorized to waive the requirement of a performance bond and payment bond for so much of the work under such contract as is to be performed in a foreign country if he finds that it is impracticable for the contractor to furnish such bonds.
"(c) Nothing in this section shall be construed to limit the authority of any contracting officer to require a performance bond or other security in addition to those, or in cases other than the cases specified in subsection (a) of this section.
"(d) Every performance bond required under this section shall specifically provide coverage for taxes imposed by the United States which

ming Excise Tax Division determined that Bernal was obligated to pay some $53,-360.38 in state sales and use taxes (pursuant to §§ 39–6–602 [2] and 39–6–603, W.S. 1977, 1984 Cum.Supp.[3]) and proceeded, in state district court, against United Pacific to recover the tax under § 39–6–604(a), W.S.1977, 1984 Cum.Supp.[4] United Pacific moved to dismiss the complaint on grounds that the district court lacked subject-matter jurisdiction and that the complaint failed to state a claim upon which relief could be

are collected, deducted, or withheld from wages paid by the contractor in carrying out the contract with respect to which such bond is furnished. However, the United States shall give the surety or sureties on such bond written notice, with respect to any such unpaid taxes attributable to any period, within ninety days after the date when such contractor files a return for such period, except that no such notice shall be given more than one hundred and eighty days from the date when a return for the period was required to be filed under the Internal Revenue Code of 1954. No suit on such bond for such taxes shall be commenced by the United States unless notice is given as provided in the preceding sentence, and no such suit shall be commenced after the expiration of one year after the day on which such notice is given."

2. Section 39–6–602, W.S.1977, 1984 Cum.Supp., provided:

"(a) Any contractor who furnishes tangible personal property under contract or in the development of real property is the consumer or user of the tangible personal property within the meaning of the sales and use tax laws of Wyoming.

"(b) To secure payment of sales and use taxes by nonresident prime contractors, each nonresident contractor shall file with the board a surety bond or legal security equal to three percent (3%) of the payments due under the contract or an amount determined by the board. The bond shall be conditioned upon the payment of all sales and use taxes which become due and payable to this state under the contract or in the real property development. This bond requirement does not apply for a nonresident contractor who has furnished a surety bond as provided by W.S. 39–6–604.

"(c) Any person a party to or performing work on a contract under this section may be enjoined from commencing or continuing any work until an approved bond has been filed with the department of revenue and taxation. Such an action shall be brought in the name of the state by the attorney general or by a county attorney. The state is not required to post security in seeking a restraining order or preliminary injunction under this section."

3. Section 39–6–603, W.S.1977, 1984 Cum.Supp., provided:

"(a) Any subcontractor who contracts with a general or prime contractor is liable for sales and use taxes as a general or prime contrac-

tor. The general or prime contractor shall withhold three percent (3%) of the payments due a nonresident subcontractor arising out of the contract entered into between both contractors. The contractor shall withhold the payments until the subcontractor furnishes him with a certificate issued by the board showing all sales and use taxes accruing by reason of the contract between them have been paid. The board may demand the withholdings at any time to satisfy the sales and use tax liability of the subcontractor and any balance shall be released by the board to him. If a contractor fails to withhold payments or refuses to remit them upon demand by the board he is liable for any sales and use taxes due the state by the nonresident subcontractor.

"(b) If a nonresident subcontractor contracts with a general or prime contractor and posts with the board a surety bond deemed sufficient by the board conditioned upon payment when due of all sales and use taxes in the performance of the contract, the withholding provisions of subsection (a) of this section do not apply."

4. Section 39–6–604(a), W.S.1977, 1984 Cum. Supp., provided:

"Whenever a nonresident general or prime contractor or nonresident subcontractor furnishes a surety bond for the faithful performance of his contract or subcontract there is imposed an additional obligation upon the surety company to the state of Wyoming and the board as its agent that the nonresident contractor shall pay all sales and use taxes which become due in the performance of the contract. In the case of a nonresident general or prime contractor this additional obligation includes liability to pay the board all sales and use taxes which have not been paid to a licensed vendor or the board by the nonresident contractor. The nonresident general or prime contractor or his surety company is authorized to recover from the nonresident subcontractor the amount of sales and use taxes accruing with respect to purchases made by the nonresident subcontractor which were paid to the board by the nonresident contractor or the surety company, or an amount equal to the sales and use taxes so paid by the nonresident contractor may be withheld from payments made under the contract. The liability of the surety company under this section is limited to three percent (3%) of the contract price."

granted. The motion to dismiss was denied and the case proceeded to a bench trial, where the trial court entered judgment against United Pacific for $53,360.38.

Appellant raises these issues for decision:

"A. The Trial Court lacked jurisdiction over the subject matter of the action.

"B. Plaintiff failed to plead and prove entitlement to relief.

"C. A surety on a bond, executed under the provisions of the Miller Act (40 U.S.C. § 270a–e) relating to the United States Government contract for improvements in Yellowstone National Park is not liable for Wyoming sales or use tax, unless the bond so provides.

"D. The Trial Court's imposition of statutory, non-contract liability on Defendant was contrary to W.S. 1977 § 39–6–405[ (a) ](x) Cum.Sup.; [5] and to the intention of Congress, as expressed in the Miller Act, an interference with the Federal Government welfare and activity, constituting a violation of Article VI Section 2 of the Constitution of the United States, [6] and therefore void."

Appellee State of Wyoming phrases the issues for decision in this way:

5. Section 39–6–405(a)(x), W.S.1977, 1984 Cum. Supp., provided:
 "(a) The following sales or leases are exempt from the excise tax imposed by this article:
 \* \* \* \* \* \*
 "(x) Sales to the United States government;
 \* \* \*"

6. The second clause of Article VI, United States Constitution, provides:
 "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

7. 4 U.S.C. § 105 provides:
 "(a) No person shall be relieved from liability for payment of, collection of, or accounting for any sales or use tax levied by any State, or by any duly constituted taxing authority therein, having jurisdiction to levy such a tax, on

"I. DID THE DISTRICT COURT EXERCISE PROPER SUBJECT MATTER JURISDICTION OF THE ACTION?"

"II. DID APPELLEE SUFFICIENTLY PLEAD AND PROVE ENTITLEMENT TO RELIEF?"

"III. DID THE TRIAL COURT CORRECTLY HOLD THAT APPELLANT IS LIABLE FOR AN OBLIGATION IMPOSED BY STATE LAW AND NOT ON THE BOND EXECUTED PURSUANT TO THE MILLER ACT?"

"IV. IS THE IMPOSITION OF STATUTORY LIABILITY ON APPELLANT CONTRARY TO W.S. 39–6–405(a)(x) AND IF NOT, DOES IT VIOLATE THE SUPREMACY CLAUSE OF THE UNITED STATES CONSTITUTION?"

"V. CAN APPELLANT RAISE CONSTITUTIONAL OBJECTIONS TO W.S. 39–6–604(a) ON APPEAL ·IF IT DID NOT DO SO AT THE TRIAL COURT BELOW?"

Following briefing and oral argument in this case, the court asked the parties to submit supplemental briefs addressing the question:

"Whether beyond permitting the imposition and collection of sales and use taxes the provisions of Title 4, United States Code, §§ 105, 108 and 110, [7] or any

the ground that the sale or use, with respect to which such tax is levied, occurred in whole or in part within a Federal area; and such State or taxing authority shall have full jurisdiction and power to levy and collect any such tax in any Federal area within such State to the same extent and with the same effect as though such area was not a Federal area.
 "(b) The provisions of subsection (a) shall be applicable only with respect to sales or purchases made, receipts from sales received, or storage or use occurring, after December 31, 1940."

4 U.S.C. § 108 provides:
 "The provisions of sections 105–110 of this title shall not for the purposes of any other provision of law be deemed to deprive the United States of exclusive jurisdiction over any Federal area over which it would otherwise have exclusive jurisdiction or to limit the jurisdiction of the United States over any Federal area."

4 U.S.C. § 110 provides:
 "As used in sections 105–109 of this title—
 "(a) The term 'person' shall have the meaning assigned to it in section 3797 of title 26.

other authority justify the extension of the provisions of § 39–6–604(a), W.S.1977 (1984 Cum.Supp.) to a factual situation involving the furnishing of a bond pursuant to the Miller Act, 40 U.S.C., § 270(a)(b) [sic], in connection with performance of a construction contract in Yellowstone National Park in view of the exclusive legislative jurisdiction of the United States of America over Yellowstone National Park?"

There are, then, two basic questions to be resolved in this appeal: (1) whether the Wyoming courts can entertain this suit; and (2) whether appellee was entitled to the relief granted.

## JURISDICTION

■■■■ For clarity, we outline the well-established principles we need not decide in this case, but which set the stage for the question here raised. The State can recover sales and use tax from a nonresident prime contractor (§ 39–6–504(b), W.S.1977 (May 1985 Replacement);[8] and § 39–6–510, W.S.1977 (May 1985 Replacement)[9] ) even

"(b) The term 'sales or use tax' means any tax levied on, with respect to, or measured by, sales, receipts from sales, purchases, storage, or use of tangible personal property, except a tax with respect to which the provisions of section 104 of this title are applicable.

"(c) The term 'income tax' means any tax levied on, with respect to, or measured by, net income, gross income, or gross receipts.

"(d) The term 'State' includes any Territory or possession of the United States.

"(e) The term 'Federal area' means any lands or premises held or acquired by or for the use of the United States or any department, establishment, or agency, of the United States; and any Federal area, or any part thereof, which is located within the exterior boundaries of any State, shall be deemed to be a Federal area located within such State."

8. Section 39–6–504(b), W.S.1977 (May 1985 Replacement), provides:

"Persons storing, using or consuming tangible personal property are liable for the tax imposed by this article. The liability is not extinguished until the tax has been paid to the state but a receipt given to the person by a registered vendor in accordance with subsection (a) of this section is sufficient to relieve the purchaser from further liability."

9. Section 39–6–510, W.S.1977 (May 1985 Replacement), provides:

"(a) Any tax due under this article constitutes a debt to the state from the persons who are parties to the transaction and is a lien from the date due on all the property of those persons. The tax due together with interest, penalties and costs may be collected by appropriate judicial proceedings or the board may seize and sell at public auction so much of the persons' property as will pay all the tax, interest, penalties and costs. Notice of the auction must be published for four (4) weeks in a newspaper published in the resident county of the persons involved.

"(b) The board may bring an action to recover any delinquent taxes, penalty or interest in any appropriate court within ten (10) years following the delinquency. In such action a certificate by the board is prima facie evidence of the amount due.

"(c) If any person is delinquent in the payment of taxes, penalty or interest imposed by this article, the board may give notice of the amount of the delinquency to any person having in their possession or control credits or personal property belonging to the delinquent taxpayer or owing debts to him at the time of the notice. No person so notified shall transfer or make any disposition of the credits, personal property or debts unless the board approves of the disposition or until sixty (60) days has elapsed from the receipt of the notice. Each person receiving a notice under this subsection shall advise the board within five (5) days after receiving the notice of all credits or personal property in their possession or under their control which belong to the delinquent taxpayer or of debts owed him.

"(d) At any time following a delinquency the board may seize and sell at public auction any property owned by the delinquent taxpayer to pay all taxes, penalty and interest due plus the cost involved in seizing and selling the property. Notice of the sale showing its time and place shall be mailed to the delinquent taxpayer at least ten (10) days prior to the sale. The notice shall also be printed in a newspaper of general circulation published in the county wherein the seized property is to be sold at least ten (10) days prior to the sale. If no newspaper is published in the county the notice shall be posted in three (3) public places ten (10) days prior to the sale. The notice shall contain a description of the property to be sold, a statement of the entire amount due, the name of the delinquent taxpayer and a statement that unless the amount due is paid on or before the time of sale, the property or so much thereof as necessary shall be sold. The board shall give the purchaser a bill of sale for personal property or a deed for real property purchased at the sale. Any unsold property seized may be left at the sale at the risk of the delinquent taxpayer. If

though he has a federal contract. *C.R. Frederick, Inc. v. State Board of Equalization*, 38 Cal.App.3d 385, 120 Cal.Rptr. 434, 440 cert. denied 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 819 (1974); *G.M. Shupe, Inc. v. Bureau of Revenue*, 89 N.M. 265, 550 P.2d 277, 279 (1976); *Robert E. McKee, General Contractor, Inc. v. Bureau of Revenue*, 80 N.M. 453, 457 P.2d 701, 705 (1969); *Hot Springs Concrete Co. v. Rosamond*, 178 Ark. 194, 10 S.W.2d 12, 13 (1928). Wyoming can recover the tax from any surety who has posted state statutory tax bonds for a nonresident prime contractor. Section 39–6–602(b), W.S.1977 (May 1985 Replacement).[10] Any such suit would properly be entertained by Wyoming courts. The State cannot, however, recover such taxes from the federal government in any court. Section 39–6–505(a)(iv), W.S. 1977 (May 1985 Replacement);[11] 4 U.S.C. § 107(a); *Washington v. United States*, 460 U.S. 536, 103 S.Ct. 1344, 1346, 75 L.Ed.2d 264 (1983); *United States v. New Mexico*, 455 U.S. 720, 102 S.Ct. 1373, 1383, 71 L.Ed.2d 580 (1982); *United States v. Tax Commission of Mississippi*, 421 U.S.

599, 95 S.Ct. 1872, 1876, 44 L.Ed.2d 404 (1975).

In addition, if a nonresident prime contractor not working on a federal project has filed a performance bond, his surety can be held liable for the sales and use taxes. Section 39–6–604(a), supra note 4. This is so because the statute becomes a part of the contract. The existing law is part of a contract, just as if it had been written into the contract. *Meuse-Rhine-Ijssel Cattle Breeders of Canada, Ltd. v. Y-Tex Corporation*, Wyo., 590 P.2d 1306, 1309 (1979); *Tri County Electrical Association, Inc. v. City of Gillette*, Wyo., 584 P.2d 995, 1007 (1978). See also *In re Hagood*, Wyo., 356 P.2d 135 (1960); *Board of Commissioners of Platte County v. Mason*, 38 Wyo. 1, 264 P. 93 (1928); *Black and Yates v. Negros-Philippine Lumber Company*, 32 Wyo. 248, 231 P. 398, 37 A.L.R. 1487 (1924). The United States Supreme Court has long so held. *Ogden v. Saunders*, 25 U.S. (12 Wheat.) 213, 257–262, 6 L.Ed. 606 (1827).

Wyoming courts, however, have no jurisdiction to entertain suits on a Miller bond. 40 U.S.C. § 270b(b);[12] *United*

---

the monies received at the sale are in excess of the amount due the excess shall be given to the delinquent taxpayer upon his receipt therefor. If a receipt by the delinquent taxpayer is not given the board shall deposit the excess with the state treasurer as trustee for the delinquent taxpayer.

"(e) Upon request of ·the board, the attorney general may institute proceedings to restrain and enjoin any person from:

"(i) Acting as a vendor until they have received a license as required by W.S. 39–6–403(a);

"(ii) Continuing to act as a vendor if they have not remitted to the board, when due, all taxes, penalty and interest imposed by this article.

"(f) No person who feels aggrieved by the payment of the taxes, penalty and interest imposed by this article may appeal a decision of the board until all taxes, penalty and interest have been paid."

10. Section 39–6–602(b), W.S.1977 (May 1985 Replacement), provides:

"To secure payment of sales and use taxes by nonresident prime contractors, each nonresident contractor shall file ,with the board a surety bond or legal security equal to three percent (3%) of the payments due under the

contract or an amount determined by the board. The bond shall be conditioned upon the payment of all sales and use taxes which become due and payable to this state under the contract or in the real property development. This bond requirement does not apply for a nonresident contractor who has furnished a surety bond as provided by W.S. 39–6–604."

11. Section 39–6–505(a)(iv), W.S.1977 (May 1985 Replacement), provides:

"(a) The following purchases or leases are exempt from the excise tax imposed by this article:

\* \* \* \* \* \*

"(iv) Purchases made by the United States government; \* \* \*"

12. 40 U.S.C. § 270b(b) provides:

"Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing, in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere, irrespective of the amount in controversy in such suit, but no such suit shall be commenced after the expiration of one year after the day on which the

*States ex rel. Harvey Gulf International Marine, Inc. v. Maryland Casualty Company,* 573 F.2d 245, 247 (5th Cir.1978); *Aetna Casualty & Surety Company v. United States ex rel. R.J. Studer & Sons,* 365 F.2d 997, 1000 (8th Cir.1966); *American Insurance Company v. Kinder,* Mo. App., 640 S.W.2d 537, 540 (1982); *Hot Springs Concrete Co. v. Rosamond,* supra, 10 S.W.2d at 13; *General Equipment, Inc. v. United States Fidelity and Guaranty Insurance Company,* La.App., 292 So.2d 806, 807 (1974); *Pierce Contractors, Inc. v. Peerless Casualty Company,* Fla., 81 So.2d 747, 749 (1955).

The issue presented in the case at bar, however, slips into the interstices created by these well-established principles. The question which remains unanswered by these authorities is whether the State can recover the tax owed by a nonresident contractor from a Miller Act surety in state court. The answer requires an analysis of the interplay of three statutory schemes with differing purposes and objectives.

The Wyoming taxing scheme provides for sales tax (§ 39–6–401 et seq.) and the comparable-use tax (§ 39–6–501 et seq.) and also provides for payment of sales and use taxes by contractors (§ 39–6–601 et seq.). In addition, § 39–6–604(a), W.S.1977, provides that an additional obligation is imposed on one who provides a performance bond to also answer for the unpaid taxes of a nonresident contractor. At the time the surety contract in question was made, the statute read:

"Whenever a nonresident general or prime contractor or nonresident subcontractor furnishes a surety bond for the faithful performance of his contract or subcontract there is imposed an additional obligation upon the surety company to the state of Wyoming and the board as its agent that the contractor shall pay all sales and use taxes which become due in the performance of the contract. In the case of a nonresident general or prime contractor this additional obligation includes liability to pay the board all sales and use taxes which have not been paid to a licensed vendor or the board by the contractor or subcontractor. The general or prime contractor or his surety company is authorized to recover from the subcontractor the amount of sales and use taxes accruing with respect to purchases made by the subcontractor which were paid to the board by the contractor or the surety company, or an amount equal to the sales and use taxes so paid by the contractor may be withheld from payments made under the contract. The liability of the surety company under this section is limited to three percent (3%) of the contract price." Section 39–6–604(a).

It is under authority of this section that the State seeks to recover the unpaid taxes from United Pacific.

The Buck Act authorizes the states to collect such taxes as are here in question on activities occurring within federal enclaves,[13] except from the United States or its instrumentalities.[14] Prior to passage of the Buck Act in 1947, the question of state authority to tax in federal enclaves was a difficult one. See *United States v. New Mexico,* supra, 102 S.Ct. at 1380–1382, and *C.R. Frederick, Inc. v. State Board of Equalization,* supra, 120 Cal.Rptr. at 438–

---

last of the labor was performed or material was supplied by him. The United States shall not be liable for the payment of any costs or expenses of any such suit."

**13.** 4 U.S.C. § 105(a), supra note 7.

**14.** 4 U.S.C. § 107 provides:
"(a) The provisions of sections 105 and 106 of this title shall not be deemed to authorize the levy or collection of any tax on or from the United States or any instrumentality thereof, or the levy or collection of any tax with respect to sale, purchase, storage, or use of tangible personal property sold by the United States or any instrumentality thereof to any authorized purchaser.
"(b) A person shall be deemed to be an authorized purchaser under this section only with respect to purchases which he is permitted to make from commissaries, ship's stores, or voluntary unincorporated organizations of personnel of any branch of the Armed Forces of the United States, under regulations promulgated by the departmental Secretary having jurisdiction over such branch."

439, for excellent analyses of prior history. The Buck Act was passed to prevent the claim of immunity from state use and sales taxes on the ground that the activity or use occurred in an area of exclusive federal legislative jurisdiction. *United States v. State Tax Commission of Mississippi*, supra, 95 S.Ct. at 1879. The taxes now may be imposed to the same extent as if the activity occurred in a nonfederal area. 4 U.S.C. § 105(a), supra note 7. The Act retains the immunity of the United States itself from liability for such taxes. 4 U.S.C. § 107(a); *United States v. New Mexico*, supra, 102 S.Ct. at 1383. Wyoming law also expressly honors this prohibition. Sections 39–6–405(a)(x) and 39–6–505(a)(iv), W.S.1977 (May 1985 Replacement). Thus, the Buck Act authorizes imposition of sales and use tax on contractors working on federal projects. *C.R. Frederick, Inc. v. State Board of Equalization*, supra, 120 Cal.Rptr. at 440; *Robert E. McKee, General Contractor, Inc. v. Bureau of Revenue*, supra, 457 P.2d at 705; *Texas Co. v. Siefried*, 60 Wyo. 142, 147 P.2d 837, 842, reh. denied, 60 Wyo. 142, 150 P.2d 99 (1944); *Bullock v. W & W Vending & Food Service of Texas, Inc.*, Tex.Civ. App., 611 S.W.2d 713, 717–718 (1981). As the United States Supreme Court has explained, the liability of federal contractors for state taxes is broad indeed; congress may expressly expand immunity for federal contractors, but without such action, the states' power to tax the federal contractors will be denied only under the "clearest constitutional mandate." *Washington v. United States*, supra, 103 S.Ct. at 1351, quoting *United States v. New Mexico*, supra, 102 S.Ct. at 1384. Thus, it is clear that under the Buck Act the State of Wyoming has full jurisdiction to recover the state tax from the federal contractor, Bernal.

In the case at bar, however, the State sought to recover the delinquent tax from the contractor's surety, United Pacific, under the authority of § 39–6–604(a), which imposes an additional statutory obligation on the surety for performance of a nonresident prime contractor to pay overdue sales and use taxes. The contractor in the case at bar did not post a tax bond under § 39–6–602(b). Rather, at the department's request, the contractor furnished copies of the payment and performance bond for the project which had been procured in response to Miller Act requirements. The department immediately notified United Pacific "that an additional obligation is imposed upon your surety company * * * that the contractor shall pay all sales and use taxes" and that United Pacific's liability was limited to three per cent of the total contract price.

Thus, we are required to consider the third statutory scheme, the Miller Act (40 U.S.C. § 270a to § 270d). The Miller Act requires a federal contractor such as Bernal to post a payment bond. 40 U.S.C. § 270a(a)(2), supra note 1. The Act also requires the federal contractor to post a performance bond (40 U.S.C. § 270a(a)(1), supra note 1), which includes a federal tax bond. 40 U.S.C. § 270a(d), supra note 1. The Miller Act's objectives are different from the previous statutory schemes. The policy of the Miller Act is to protect those whose labor and materials go into public projects as well as the United States. *Aetna Casualty & Surety Company v. United States ex rel. R.J. Studer & Sons*, supra, 365 F.2d at 1000, citing *United States ex rel. Sherman v. Carter*, 353 U.S. 210, 77 S.Ct. 793, 797, 1 L.Ed.2d 776 (1957), and *Clifford F. MacEvoy Co. v. United States ex rel. Calvin Tomkins Co.*, 322 U.S. 102, 64 S.Ct. 890, 893, 88 L.Ed.2d 1163 (1944); *United States ex rel. Bryant Electric Company, Ltd. v. Aetna Casualty & Surety Company*, supra, 297 F.2d at 669. This protection is in lieu of any protection they might receive under state statutes. *Nickell v. United States ex rel. Texas Vitrified Pipe Company*, 340 F.2d 117, 119 (10th Cir.1965), citing *United States ex rel. Sherman v. Carter*, supra. The Miller Act provides that all who provide labor or materials to a project for which a § 270a payment bond has been made have a right to

sue on the bond. 40 U.S.C. § 270b(a).[15] The Act also mandates that "[e]very suit instituted under this section shall be brought * * * in the United States District Court * * * and not elsewhere." 40 U.S.C. § 270b(b). Appellant United Pacific claims that the latter section prevents the Wyoming state courts from exercising jurisdiction over the suit by the State against the surety on the statutory tax liability. We cannot agree.

It is true that some courts have used broad language in discussing the exclusive jurisdiction provision which would appear to cover every judgment against a surety who provides a Miller Act bond. *United States ex rel. Bryant Electric Company, Ltd. v. Aetna Casualty & Surety Company*, supra, 297 F.2d at 669; *Balboa Insurance Company v. Sippial Electric Company*, Ala., 379 So.2d 579, 581 (1980). The bulk of the cases involve suit by a materialman on the bond. See, e.g., *United States ex rel. Harvey Gulf International Marine, Inc. v. Maryland Casualty Company*, supra, 573 F.2d at 247; *Pierce Contractors, Inc. v. Peerless Casualty Company*, supra; *Gichner v. Insurance Companies of North America*, D.C.Mun.App., 180 A.2d 842 (1962); *General Equipment, Inc. v. United States Fidelity and Guaranty Insurance Company*, supra; *Hoffmeister Cabinets of Nevada, Inc. v. Bivins*, 87 Nev. 282, 486 P.2d 57 (1971); *Gypsum Contractors, Inc. v. American Surety*

*Company of New York*, 37 N.J. 315, 181 A.2d 174 (1962); *Gifford-Wood Company v. Travelers Indemnity Company*, 42 Misc.2d 962, 249 N.Y.S.2d 317 (1964). Furthermore, it is well established that the mere fact that a Miller Act bond has been issued is not a proper basis for resting jurisdiction solely in the federal courts. Rather, for the federal jurisdiction to be exclusive, the suit must be one on the Miller Act bond. *Western Casualty & Surety Company v. Biggs*, 217 F.2d 163, 165 (7th Cir.1954); *Ukropina-Polich-Kral v. Superior Court for the County of Butte*, 186 Cal.App.2d 299, 8 Cal.Rptr. 692 (1960); *Voelz v. Milgram Contracting Co.*, 272 Wis. 366, 75 N.W.2d 305, 306 (1956); *Hot Springs Concrete Co. v. Rosamond*, supra, 10 S.W.2d at 14. The prohibition in the Miller Act against state court jurisdiction over actions on the bond does not relate to other suits which are not based directly on the bond. *Massachusetts Bonding & Ins. Co. v. Robert E. Denike, Inc.*, 92 F.2d 657, 658 (3rd Cir.1937), cited in *Voelz v. Milgram Contracting Co.*, supra, 75 N.W.2d at 306, and *Ukropina-Polich-Kral v. Superior Court for the County of Butte*, supra, 8 Cal.Rptr. at 693.

Some courts have rejected the general claim advanced there—that the suit against a Miller Act surety is not a suit on the bond—but such cases are confined to their peculiar facts, which are distinguishable from the case at bar. *Koppers Company*

---

15. 40 U.S.C. § 270b(a) provides:

"Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under sections 270a to 270d of this title and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him: *Provided, however,* That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contrac-

tor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. Such notice shall be served by mailing the same by registered mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office or conducts his business, or his residence, or in any manner in which the United States marshal of the district in which the public improvement is situated is authorized by law to serve summons."

*v. Continental Casualty Company,* 337 F.2d 499 (8th Cir.1964); *Gypsum Contractors, Inc. v. American Surety Co. of New York,* supra; *Pierce Contractors, Inc. v. Peerless Casualty Company,* supra, 81 So.2d at 749; *General Equipment, Inc. v. United States Fidelity & Guaranty Insurance Company,* supra, 292 So.2d at 807; *American Insurance Company v. Kinder,* supra, 640 S.W.2d at 539; *Airport Construction and Materials, Inc. v. Bivens,* 279 Ark. 161, 649 S.W.2d 830, 833 (1983).

The instant suit does not seek recovery on the bond. Although the surety agreement must be read to include existing law, as if the law had been written in the contract (*Meuse-Rhine-Ijssel Cattle Breeders of Canada, Ltd. v. Y-Tex Corporation,* supra, 590 P.2d at 1309), the existing law, § 39-6-604(a), W.S.1977, does not merely engraft a state tax bond on the performance bond agreement. Rather, in the plain words of the statute, "there is imposed an additional obligation upon the surety company to the state of Wyoming" to pay the tax. The result then is that, in essence, the surety contract recognizes the independent statutory obligation of the surety to answer for the taxes of the contractor. Neither is this suit one based directly on the bond, for the suit seeks recovery on the independent statutory obligation. Nor does this suit seek recovery out of the bond. The independent statutory obligation would exist even if the bond funds were exhausted by claims of the United States for failure of the contractor to perform. If this were a suit on the Miller Act bond, the State could not recover the tax from the surety, even in federal court. See *Nickell v. United States ex rel. Texas Vitrified Pipe Company,* supra, 340 F.2d at 119 (the government could not "recover on the bond from the surety for the contractor's unpaid taxes," because "claims for taxes are not labor and material within the meaning of the ordinary Miller Act bond"). See also *Oklahoma Tax Commission v. Seaboard Surety Company,* 327 F.2d 709, 711 (10th Cir.1964) (the use tax could not be recovered because it was the statutory

obligation of the federal contractor, not of the surety on its bonds).

Nor does the Wyoming statute improperly condition Miller Act rights. Cf. *Aetna Casualty & Surety Company v. United States ex rel. R.J. Studer & Sons,* supra, 365 F.2d at 999; *Hoeppner Construction Company v. United States ex rel. Mangum,* 287 F.2d 108 (10th Cir.1960). Rather, the statute imposes a distinct obligation on the surety also to guarantee the state taxes.

■ We conclude that the Wyoming statute is clear and imposes an independent statutory obligation on United Pacific to answer for Bernal's unpaid taxes. This is the cost of doing business in this state. Like the investment broker in *Gaudina v. Haberman,* Wyo., 644 P.2d 159, 166 (1982), United Pacific "is obligated to know the law surrounding such transactions * * *. It has long been a basic precept that ignorance of the law is no excuse." See also *Czapla v. Grieves,* Wyo., 549 P.2d 650 (1976). All contracts are made subject to the existing law. *Meuse-Rhine-Ijssel Cattle Breeders of Canada, Ltd. v. Y-Tex Corporation,* supra, 590 P.2d at 1309. Imposition of this liability does not discriminate against the United States or those with whom it does business, as condemned in *Washington v. United States,* supra, 103 S.Ct. at 1344, for the reason that all performance sureties for all nonresident general contractors are likewise obligated.

In conclusion, it is appropriate for us to say that this action is quite simply not a suit on the bond nor is the action based directly on the bond and it is not a suit seeking recovery out of the bond. Rather, it is a suit to enforce an independent statutory obligation placed on all those who act as sureties on performance bonds for any nonresident prime contractor—a tax obligation squarely within the permissible parameters of the Buck Act. Thus, nothing in the Miller Act prevents the state district courts from exercising jurisdiction over this suit.

## SUPREMACY CLAUSE

Appellant argues that § 39–6–604(a), W.S.1977, violates the Supremacy Clause of the United States Constitution, supra note 6, and should be set aside. We cannot agree. Under the Supremacy Clause, enforcement of a state statute such as ours may be preempted by federal law where congress expressly provides, where "despite the absence of explicit preemptive language" it is clear that congress intended to preempt by legislating comprehensively, or where it is impossible to comply with both the state and federal law and thus enforcement of the state law is an obstacle to the achievement of the federal aims. *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 104 S.Ct. 2694, 2700, 81 L.Ed.2d 580 (1984); *Maryland v. Louisiana*, 451 U.S. 725, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576 (1981); *Guschke v. City of Oklahoma City*, 763 F.2d 379, 383 (10th Cir.1985).

■ Appellee responds that we ought not decide this issue because it was not raised below. In general, this court will not consider the constitutionality of a statute if it has not been raised below. *Jahnke v. State*, Wyo., 692 P.2d 911, 928 (1984); *Hopkinson v. State*, Wyo., 664 P.2d 43, 50, cert. denied 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983); *Nickelson v. People*, Wyo., 607 P.2d 904, 907 (1980). The rule that this court will not address the constitutionality of a statute is a refinement of the rule in *Scherling v. Kilgore*, Wyo., 599 P.2d 1352, 1358 (1979). *Nickelson v. People*, supra, 607 P.2d at 908. The rule recited in *Scherling v. Kilgore* is the well-established one which holds that the supreme court will not consider any issue raised for the first time on appeal unless it goes to jurisdiction or is fundamental. See, e.g., *Kost v. First National Bank of Greybull*, Wyo., 684 P.2d 819, 825 (1984); *Estate of Altman*, Wyo., 650 P.2d 277, 281 (1982); *Harries v. State*, Wyo., 650 P.2d 273, 277 (1982); *In re Parental Rights of PP*, Wyo., 648 P.2d 512, 519 (1982); *Police Protective Association v. City of Rock Springs*, Wyo., 631 P.2d 433, 437 (1981); *Buttrey Food Stores Division v. Coulson*, Wyo.,

620 P.2d 549, 554, 20 A.L.R.4th 419 (1980). This court has accordingly addressed the constitutionality of our statutes when the question was not even raised by the parties in this court, where the matter is fundamental. *White v. Fisher*, Wyo., 689 P.2d 102, 105 (1984). In the case at bar, it is clear that the question whether § 39–6–604(a) violates the Supremacy Clause by intruding on a federally preempted area is a fundamental matter.

■ Enforcement of § 39–6–604(a) does not violate the Supremacy Clause. Under the Buck Act, the authority to tax in federal areas is explicitly granted the states. Thus, congress has neither expressly nor impliedly preempted the tax field, nor can it be impossible to comply with both state and federal law. The mandate of the Buck Act is that the state may tax as if Yellowstone National Park were not a federal area. For purposes of the Buck Act, then, it makes no difference that the surety provided a federal Miller Act bond, rather than a state performance bond. Nothing in the Miller Act expressly prohibits a state from imposing such independent statutory obligation on the surety. Where, as here, an act of congress carves an exception to the exclusive federal legislative jurisdiction over federal areas, and where, as here, state legislation does not conflict with other relevant federal legislation, there is no violation of the Supremacy Clause.

## PLEADING AND PROOF

■ The trial court did not err in failing to grant appellant's motion to dismiss for failure to state a claim. We find that the complaint adequately sets forth the basis of the tax liability alleged against United Pacific. Technical forms of pleading are not required so long as the complaint shows the plaintiff is entitled to relief. *Harris v. Grizzle*, Wyo., 599 P.2d 580, 583 (1979). Fair notice is the objective of a pleading. *Johnson v. Aetna Casualty & Surety Co. of Hartford*, Wyo., 608 P.2d 1299, 1302 (1980); *Washakie School District Number One v. Herschler*, Wyo., 606 P.2d 310, 316, cert. denied 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 28 (1980). We find

that the complaint is not defective under these standards.

 Lastly, appellant urges that the State failed to prove its entitlement to relief. In particular, appellant claims that the State failed to introduce any evidence, other than the deficiency notice, of the amount owed by the contractor. It is true that the State must have submitted some evidence upon every element of its claim. *Osborn v. Manning*, Wyo., 685 P.2d 1121, 1124 (1984). It is also conceded that courts cannot supply evidence. *Hendrickson v. Hendrickson*, Wyo., 583 P.2d 1265, 1267 (1978). The bonds, however, were introduced as part of Plaintiff's Exhibit No. 1, and indicate the amount of the construction contract. The statute limits the liability of the surety to three per cent of this amount. We find the bonds to be sufficient evidence from which the trial court could reasonably conclude that $53,360.38 was the amount of the tax owed.

For the foregoing reasons, the judgment of the trial court is affirmed.

THOMAS, C.J., files a dissenting opinion.

THOMAS, Chief Justice, dissenting.

Because I am persuaded that this is an action upon a Miller Act bond which must be brought in the United States District Court, I am constrained to dissent from the position of my brothers in this case. It may be true that our statute imposes an independent statutory obligation, but that statutory obligation is only the lever in this operation, and surely the Miller Act bond is the fulcrum. Obviously no recovery could be had by the State of Wyoming in the absence of the Miller Act bond, and it is to the conditions of that contract that the independent statutory obligation attaches. In order to invoke the provisions of the statute the State of Wyoming must, and did, allege the furnishing of the bond which it attached to its complaint as an exhibit and incorporated in its allegations by reference. The bond quite obviously was furnished pursuant to the Miller Act.

As I perceive this situation the action is brought upon a contract in the form of the Miller Act bond. One of the contractual provisions is that found in § 39–6–604(a) W.S.1977 (May 1985 Replacement). The significance of the statute, however, is that it adds a contractual provision; it cannot create a completely independent statutory obligation. The statutory obligation cannot function in a vacuum.

If the thrust of the statute is to simply create an independent statutory obligation, then its efficacy within an area of exclusive federal legislative jurisdiction is not authorized by the Buck Act, 4 U.S.C. §§ 105 et seq. Unless this obligation attaches to the Miller Act bond as an additional condition of that contract, it would have no validity within the confines of Yellowstone National Park. The Buck Act cannot be construed to authorize legislation pursuant to which sales or use taxes are collectible from a stranger to the transaction.

I would reverse the district court on the ground that it was without subject matter jurisdiction because of the provision of the Miller Act requiring suit to be brought in the United States District Court.