383 F.2d 595
 The UNITED STATES of America, for the Use of GETZ BROS. & CO., Appellant,
v.
MARKOWITZ BROS. (DELAWARE), INC., and Continental Casualty Company, Inc., Appellees.
The UNITED STATES of America, for the Use of ATKINS, KROLL & CO., Ltd., and Atkins, Kroll (Guam), Ltd., Appellant,
v.
MARKOWITZ BROS. (DELAWARE), INC., and Continental Casualty Company, Inc., Appellees.
 No. 21122.
 No. 21123.
 United States Court of Appeals Ninth Circuit.
 September 21, 1967.
 
 W. Scott Barrett, Barrett, Ferenz & Trapp, Agana, Guam, and Oakland, Cal., for appellants.
 Reyes & Lamorena, Agana, Guam, for appellee Markowitz Bros., Inc.
 Smith, Currie & Hancock, Edward H. Wasson, Jr., Atlanta, Ga., for appellee Continental Cas. Co.
 Before JOHNSEN,* BARNES, and ELY, Circuit Judges.
 ELY, Circuit Judge:
 
 
 1
 These consolidated appeals come from judgments in two suits instituted under provisions of the Miller Act, 40 U.S.C. §§ 270a-270d. The appellants were the use plaintiffs below. The appellees are a defaulting contractor and its corporate surety. The use plaintiff in No. 21,122, Getz Bros. & Co., will be called Getz, while those in No. 21,123, Atkins, Kroll & Co., Ltd., and Atkins, Kroll (Guam), Ltd., will be called Atkins.
 
 
 2
 Getz filed its action in the District Court on December 2, 1965. It alleged that the contractor had defaulted in the payment of $39,363.83 which was due on account of goods and materials which Getz had sold and delivered to the contractor. Atkins filed its complaint on December 16, 1965, alleging an unpaid obligation in the amount of $7,774.33. Continental Casualty Co., the surety company, filed its answers to both complaints on January 27, 1966. In each it alleged that it was then "without knowledge or information sufficient" to answer certain paragraphs of the two complaints, including the paragraphs in which the amounts of unpaid obligations were alleged. It denied these allegations upon the basis of its inadequate knowledge. In both complaints, the use plaintiffs prayed for the recovery of attorneys' fees and costs in addition to the amounts of the claimed obligations and interest. Thereafter, on March 11, 1966, the use plaintiffs filed a "Notice of Motion and Motion for Leave to File Amended Complaint." They thereby sought to enlarge their possible recovery by invoking a local statute of the Territory of Guam which provides, in effect, that a delinquent "insurer" shall be liable for an additional "(12%) damages upon the amount of such loss, together with all reasonable attorney's fees for the prosecution and collection of said loss * * *." The particular local statute, Government Code of Guam § 43407 (rev. ed. 1961), is quoted in the margin.[1] The motions for leave to file the amended complaints alleged that the Guamanian statute had been "borrowed from the State of Arkansas" and that the use plaintiffs had "just learned" of a "federal court decision, United States [for Use of & Benefit Magnolia Petroleum Co.] v. H. R. Henderson & Company, 126 F.Supp. 626 (W.D.Ark.1955)," holding that such a local statute "is applicable to actions * * * arising under the Miller Act." The District Court denied the motions for leave to file the proposed amended complaints, and it is that ruling which the use plaintiffs here challenge.
 
 
 3
 Pursuant to previous stipulation of the parties, the district judge signed judgments in both cases on May 24, 1966. Under one judgment, Atkins recovered its full original claim of $7,774.33 plus interest, and under the other, Getz recovered $38,032.69, $1,331.14 less than the amount of the unpaid obligation as originally alleged, plus interest. In the judgments, the right of the use plaintiffs to appeal the District Court's denials of the motions to file the amended complaints was expressly reserved.
 
 
 4
 As to the claim for attorneys' fees, no prejudice resulted to appellants from the denial of their motions to file amended complaints containing the prayers for such fees. The appellants had already prayed for the recovery of attorneys' fees in their original complaints. The local statute provides that "said attorney's fees" are "to be taxed as a part of the costs," and if they were properly recoverable under the statute, they might have been included as recoverable costs under appropriate post-judgment proceedings. In fact, both appellants sought the additional recovery in that manner. After it had obtained its consent judgment, Getz filed a memorandum of costs, supported by affidavit, claiming $4,772.84 as "reasonable attorneys' fee for prosecution and collection pursuant to Government Code of Guam § 43407." By the same course, Atkins sought a cost allowance of attorneys' fees in the sum of $3,241.44. Although the issue of the propriety of the allowance of attorneys' fees under the local statute had been specifically reserved in the judgments previously entered, the United States District Clerk mistakenly allowed the amounts of attorneys' fees which were claimed and caused the same to be included as parts of the judgments. Thereafter, on motion of the appellees, the portions of the judgments which made these allowances were vacated. There is no indication that the District Court applied its discretion in determining that appellants should not, in the light of all the circumstances, be entitled to the allowance of attorneys' fees as recoverable costs.[2] In fact, the records in both cases make it clear that the District Court decided that the local statute could not operate to appellants' favor and that, hence, it was unnecessary to reach the area of discretion.[3]
 
 
 5
 The District Court's refusal to permit appellants to enlarge their claims, so as to seek to impose a 12% penalty upon Continental, was proper. As they sought to further that object, the proposed amended complaints stated no valid claim for relief and could not have been made to do so by further amendment. The Territory was without power to enlarge a right conferred by the federal statute upon which appellants based their suits. Local law was not applicable to the basic claims. The Miller Act, 40 U.S.C. § 270b(a), limits the asserted substantive right to "the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit * * *." (Emphasis supplied.) The emphasized language clearly restricts the right which the statute confers. The operations of the Government might be obstructed or significantly impaired if, despite clear congressional definition of the right, local authorities were empowered to impose increased liability upon the Government's contractors and those executing surety contracts pursuant to the requirements of federal statutes. Rights which are created and expressly defined by the Congress should be uniformly applied by federal courts, and if the Congress should have believed it to be sound policy that local laws might affect its requirements, it might, quite easily, have so provided.
 
 
 6
 The same considerations are fairly germane in our confrontation of the problem relating to attorneys' fees, and they have much pursuasive force. We note, however, that the Fifth Circuit has held that a local statute may be operative so as to permit the recovery of attorneys' fees by a use plaintiff who seeks and obtains a judgment in the federal court pursuant to the provisions of the Miller Act. United States v. Texas Construction Company, 237 F.2d 705 (5th Cir. 1955). Moreover, our own court has, in dictum, made an expression to the same effect. Macri v. United States, 353 F.2d 804, 811 (9th Cir. 1965).[4] Here we find it unnecessary to question the validity of the opinion of the Fifth Circuit or to reexamine the soundness of our dictum in Macri. The local statute with which we are concerned could not, in our opinion, be applied in the cases before us. It is a statute purporting to impose damages in the nature of penalties and, as such, should be strictly construed. Union Indemnity Co. v. Vetter, 40 F.2d 606, 609 (5th Cir. 1930). All parties agree that it was "borrowed," or adopted, from the provisions of a statute which had previously been enacted by the State of Arkansas. The Arkansas statute, set forth in the margin,[5] expressly included a provision that a "surety * * * company" should be subject to the identical penalties prescribed by the statute of Guam. Notwithstanding, the latter statute undertook to impose such penalties upon an "insurer" only. There are marked and traditional differences between a surety contract and a contract of insurance. The Supreme Court has recognized "the usual view, grounded in commercial practice, that suretyship is not insurance." Pearlman v. Reliance Ins. Co., 371 U.S. 132, 140 n. 19, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962). See also Cross, Suretyship Is Not Insurance, 30 Ins.Counsel J. 235 (1963). This being true, it is reasonable to infer that Guam's legislature, in modifying the pattern statute, evidenced unwillingness to include sureties among those subject to the prescribed penalties. Analysis of the statute's precise language strongly supports this inference. It is specified that the penalties are applicable "where loss occurs" and when "the insurer liable therefor shall fail to pay the same within the time specified in the policy * * *." (Emphasis supplied.) A surety contract or a bond is not ordinarily characterized as a "policy," and the quoted language more appropriately fits an insurance contract wherein principal amounts are specified or wherein the insurer is liable even though its insured, if an indemnitee, as in a public liability insurance contract, is himself able financially to satisfy the obligation. Finally, we observe that the statute in question obligates the "insurer" to pay the penalties only to "the holder of such policy," and one who may eventually become the beneficiary under a suretyship contract can hardly be so characterized. It is expressly recognized in section 43305 of Guam's Government Code that "fidelity and surety insurance" does not include "insurance policies." That definitional statute provides, in part, "Fidelity and surety insurance includes all guaranteeing of persons holding places of public trust and of the performance of contracts other than insurance policies." (Emphasis supplied.) Surely, then, it was not intended that a surety contract should be a "policy" or that a surety company should be an "insurer" under the quoted terms as they are employed in the penalty statute.
 
 
 7
 We have not overlooked the definitions of "insurance" and "insurer" which also appear in the Government Code of the Territory.[6] Suffice it to say that if these definitions embrace surety contracts and sureties, the motivation, or need, for the Territory's having expressly defined "fidelity and surety insurance" as something "other than insurance policies" is remarkably obscure.[7]
 
 
 8
 Affirmed.
 
 
 
 Notes:
 
 
 *
 Senior Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 [1]
 "Failure to pay loss, recovery of amount due and damages. In all cases where loss occurs and the insurer liable therefor shall fail to pay the same within the time specified in the policy, after demand made therefor, such insurer shall be liable to pay the holder of such policy, in addition to the amount of such loss, twelve percent (12%) damages upon the amount of such loss, together with all reasonable attorney's fees for the prosecution and collection of said loss; said attorney's fees to be taxed by the court where the same is heard on original action, by appeal or otherwise, and to be taxed as a part of the costs therein and collected as other costs are or may be by law collected; and writs of attachment or garnishment filed or issued after proof of loss or death has been received by the insurer shall not defeat the provisions of this section, provided the insurer desiring to pay the amount of the claim as shown in the proof of loss or death may pay said amount into the registry of the court after issuance of writs of attachment and garnishment, in which event there shall be no further liability on the part of said insurer."
 
 
 [2]
 In upholding a District Court's denial of attorneys' fees sought to be recovered by the successful litigant pursuant to the provisions of Alaskan court rules, we have held that the disallowance rested within the discretionary powers of the court. Macri v. United States, 353 F.2d 804 (9th Cir. 1965)
 
 
 [3]
 Obviously, it would be harsh in the extreme to require Continental to pay $3,241.44 in attorneys' fees to Atkins when it had, within a relatively short time after Atkins had presented its claim, consented to a judgment against it in the sum of $7,774.33, the full amount of the unpaid obligation. In both cases Continental urges that since it satisfied its obligations within the time which was reasonably necessary for it to determine their amounts, it should not be penalized under the local statute. Acceptance of this proposition would require that we, as a reviewing court, make legal determinations without benefit of necessary factual support
 Continental also argues that since the consent judgment in favor of Getz was for a lesser principal amount than that which was originally claimed, it cannot be liable for the 12% penalty and attorneys' fees in connection with the Getz claim. See National Fire Insurance Co. v. Kight, 185 Ark. 386, 47 S.W.2d 576 (1932).
 
 
 [4]
 InMacri we simply affirmed the District Court's disallowance of attorneys' fees. See footnote 1, supra. In another of our recent cases, we found it unnecessary to meet the precise issue. Travelers Indemnity Company v. United States, 362 F.2d 896 (9th Cir. 1966). There it was written, "In this case, the propriety of allowing attorney fees to a successful Miller Act claimant is not so ponderable as it will be in others, for we need not decide whether the allowance of such fees is to be governed by federal or state law, nor whether state statutes providing for the allowance of such fees with respect to state public works projects may be utilized as defining a state `public policy' if state law is held to govern the rights of a Miller Act claimant." 362 F.2d at 899. Decisions of the District Courts of our Circuit are in conflict. Compare United States v. Hoffman Construction Co., 163 F.Supp. 296 (E.D.Wash.1958), with United States v. Reliance Insurance Co. of Philadelphia, Pa., 227 F.Supp. 939 (D.Mont.1964).
 United State to Use of Watsabaugh & Co. v. Seaboard Surety Co., 26 F.Supp. 681 (D.Mont.1938), aff'd, 106 F.2d 355 (9th Cir. 1939), is of no assistance since the disallowance of attorneys' fees was based upon the fact that Montana law made no provision for them.
 
 
 [5]
 "Suits against insurers — Damages and attorney fees on loss claims. — In all cases where loss occurs and the cargo, fire, marine, casualty, fidelity, surety, cyclone, tornado, life, health, accident, medical, hospital, or surgical benefit insurance company and fraternal benefit society or farmers' mutual aid association liable therefor shall fail to pay the same within the time specified in the policy, after demand made therefor, such person, firm, corporation and/or association shall be liable to pay the holder of such policy or his assigns, in addition to the amount of such loss, twelve per cent (12%) damages upon the amount of such loss, together with all reasonable attorneys' fees for the prosecution and collection of said loss; said attorney's fee to be taxed by the court where the same is heard on original action, by appeal or otherwise, and to be taxed up as a part of the costs therein and collected as other costs are, or may be by law collected; and writs of attachment or garnishment filed or issued after proof of loss or death has been received by the company shall not defeat the provisions of this section, provided the company or association, desiring to pay the amount of the claim as shown in the proof of loss or death may pay said amount into the registry of the court, after issuance of writs of attachment and garnishment in which event there shall be no further liability on the part of said company."
 Ark.Stat.Ann. § 66-3238 (1966).
 
 
 [6]
 "`Insurance' is a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from contingent or unknown events." Government Code of Guam § 43003(q) (rev. ed. 1961)
 "`Insurer' means the person who undertakes to indemnify another by insurance; `insured' means the person so indemnified." Government Code of Guam § 43003(r) (rev. ed. 1961).
 
 
 [7]
 Compare Union Indemnity Co. v. Vetter, supra, wherein the Fifth Circuit, rejecting a claim for attorneys' fees, held that the indemnity bond upon which suit was brought was not a "policy or contract of insurance" to which a Florida statute applied. 40 F.2d at 609